# SARAH MESBERG v. CITY OF DULUTH AND ANOTHER.[1]

April 20, 1934.

No. 29,775.

[1]Reported in 254 N. W. 597.

394

*L. M. Hatlestad* and *Lewis, Hunt & Palmer,* for appellant.

*Bert W. Forbes* and *Harry E. Weinberg,* for respondent city of Duluth.

*Mitchell, Gillette, Nye & Harries* and *W. O. Bissonett,* for respondent First & American National Bank of Duluth.

*DEVANEY, Chief Justice.*

Action to recover for personal injuries sustained by plaintiff when she fell on a public sidewalk in the city of Duluth. The action was instituted against the city of Duluth and against the First & American National Bank of Duluth, whose building abuts the sidewalk upon which plaintiff fell. At the close of the testimony the court directed a verdict for defendant city and submitted the case against defendant bank to a jury, who found against plaintiff and for the bank. From a denial of her motion for a new trial plaintiff appeals.

For 26 years defendant bank has maintained its building at the intersection of Third avenue west and Superior street in the city of Duluth. The roof is flat but is bordered by a two-foot cornice which slopes toward the outside of the building. The night before the day upon which occurred the accident here in question a fresh snow fell in the city of Duluth. Some of such snow accumulated on this cornice. On account of a thaw the day of the accident, this snow melted and caused water to drip onto the public sidewalk abutting the bank building. This dripping water formed a strip of ice on the sidewalk about 24 inches wide and from 8 to 18 inches out from the building line. It was on this strip of ice that plaintiff slipped and fell. No salt or sand had been put thereon at the time of her fall.

The discussion herein must be divided so as to consider: (1) The city's liability, which depends upon whether or not the city had notice, actual or constructive, of the existence of the ice which

caused plaintiff's fall; and (2) the bank's liability, which hinges upon (a) whether this strip of ice constituted a public nuisance within 2 Mason Minn. St. 1927, § 10241, and (b) whether the trial court erred in not submitting § 414 of the building code of Duluth to the jury for their consideration in determining the bank's negligence.

■ We first will consider the court's action in directing a verdict for defendant city. Plaintiff made no attempt to show that defendant city had actual knowledge of the particular patch of ice which caused her fall, nor did she purport to show that this particular patch of ice had existed for such a length of time that defendant city had even constructive notice thereof. Plaintiff relies rather on this theory. We quote from her brief:

"Over a period of many years there existed certain unchanging physical conditions. These physical conditions, taken in conjunction with prevailing climatic conditions, operated uniformly to produce certain definite, periodically recurring results. These results thus produced may properly be found by a jury to be within the constructive notice of the city even though these results, if considered apart from their causes, had not existed for a sufficient time to impart notice thereof to the city."

In other words, plaintiff contends that since the building with its cornice has stood on its present site unchanged for 26 years and since it is a matter of common knowledge that snow periodically accumulates on this cornice and melts every winter, the jury well could find that the city was negligent in not removing or sanding the ice strip formed on the sidewalk below on this certain occasion.

We cannot accede to plaintiff's contention. It is settled law that before a municipality can be held liable for injury resulting from a defect in or obstruction on its streets or sidewalks it must have either actual or constructive notice of the existence of such defect or obstruction a sufficient time before the accident to allow a reasonable opportunity to remedy the condition. Stanke v. City of St. Paul, 71 Minn. 51, 54, 73 N. W. 629 (ice); Killeen v. City of St. Cloud, 136 Minn. 66, 68, 161 N. W. 260 (pile of sand); Brandt v.

City of Duluth, 158 Minn. 104, 196 N. W. 932 (defect in sidewalk); Stradtherr v. City of Sauk Center, 180 Minn. 496, 504, 231 N. W. 210 (rubbish); 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 6823. In the instant case the city would have constructive notice only if the icy condition had existed for such a continuing period of time that it should reasonably have known thereof. But, since the particular patch of ice here involved apparently had been in existence at most only a few hours before the accident occurred, the city cannot be said to have had such constructive notice. Although some of the cases upon which plaintiff relies do contain language broad enough to sustain her position, these cases for the most part involve quite different situations. In Stanke v. City of St. Paul, 71 Minn. 51, 73 N. W. 629, plaintiff fell on an icy public sidewalk and sustained injuries. The court held that since the city had neither actual nor constructive notice of this condition a verdict was properly directed for defendant city. Any language in support of plaintiff's theory contained therein is merely *obiter*. Nichols v. Village of Buhl, 152 Minn. 494, 193 N. W. 28, involved a situation where those residing near the village hall were permitted to take their supply of water from water taps therein, carrying it away in pails. In carrying, some of the water was spilled onto the sidewalk and froze thereon in small patches. The basis of the decision seems to be that the village officials were present in the village hall daily and must actually have known of this icy condition of the walk. This case therefore is distinguishable from the case at bar. Roberts v. Village of Buhl, 160 Minn. 398, 200 N. W. 354, was a case where the city itself negligently allowed gutter apparatus which it had installed to cause unnatural formation of ice. There is no such element in the case at bar. Cases from other jurisdictions are of little help and will not be here related in detail. It suffices to say that the case language with which plaintiff attempts to buttress her argument is for the most part *obiter dictum*.

If we were to follow plaintiff's theory, every city in this state would be liable without having actual or constructive notice for every injury sustained on every patch of ice on every public sidewalk where a building abutted the walk and snow accumulated on

the cornice, window-sills, fire escapes, or other ledges on the building and subsequently melted and formed ice below. Certainly there must be hundreds of buildings in the city of Duluth and in other cities which abut public sidewalks. On each of these snow falls, accumulates on the window-sills, cornices, and other ledges, and subsequently melts, thereby causing ice to be formed on the sidewalk below. If the city were to be liable for the injury in the case at bar, it would be liable every time snow on such a building melted and formed ice on the sidewalk merely because the city knew the building had been there unchanged for a number of years. It would be liable for injuries sustained during the winter by persons on nearly all sidewalks in the loop district even though the injury were occasioned by a patch of ice which had existed only an hour or two. We cannot extend the rule this far. Pertinent here is a quotation from Wright v. City of St. Cloud, 54 Minn. 94, 97, 55 N. W. 819, 820:

"In this climate * * * the duty of cities with respect to ice and snow must necessarily be somewhat limited, and care should be taken that they be not held to a degree of diligence beyond what is reasonable, in view of their situation. What reasonable care might require in a milder climate * * * might be too high a standard in this climate."

In view of what here has been said, it follows that the trial court was not in error in excluding evidence which plaintiff offered in attempting to show that for a number of years similar patches of ice had formed on the particular sidewalk upon which she fell. Such evidence was entirely immaterial. As to defendant city, it is not important whether this strip of ice constituted a public nuisance or not, for, as above stated, the city had neither actual nor constructive notice of its existence. Consequently, even if it be assumed to be a nuisance, defendant city is none the more liable.

■ We will next consider the case as against defendant bank, which we think was submitted to the jury under proper instructions. Their finding of no liability on the bank's part will not be disturbed. Plaintiff complains on two grounds: (a) That the trial

court refused to instruct the jury that if they found the facts as plaintiff alleges them to be defendant bank was guilty of maintaining a public nuisance; and (b) that the trial court refused to permit § 414 of the building code, a part of the ordinances of the city of Duluth, to go to the jury for their consideration in determining defendant bank's liability.

(a) Plaintiff contends that because defendant bank was guilty of maintaining a public nuisance it is liable irrespective of negligence on its part. We cannot agree that this patch of ice upon which plaintiff fell was a public nuisance. 2 Mason Minn. St. 1927, § 10241, states:

"A public nuisance * * * consists in unlawfully doing an act or omitting to perform a duty, which act or omission—

\* \* \* \* \* \*

"3. Shall unlawfully interfere with, obstruct, or tend to obstruct or render dangerous for passage, * * * a public park, square, street, alley, or highway * * *."

We do not think the legislature in drafting this statute intended to include in its definition of a public nuisance a patch of ice such as the one here in question. It is not necessary to go into an extended review of the authorities. We need merely look at the facts of the instant case to justify our conclusion. If plaintiff is right, every time snow which has accumulated on a cornice, ledge, or window-sill of a building melts and causes ice to form on an abutting sidewalk below, the building owner is guilty of maintaining a nuisance. Such a rule of law seems too harsh and too broad. In determining whether an icy formation on a public sidewalk constitutes a public nuisance within the statutory definition, many factors need be considered. The size of the patch; the length of time it has been in existence; the cause thereof, as for instance a defective roof, negligently kept drain facilities, etc; the diligence with which it has been removed or covered with sand—all are pertinent factors for consideration. We do not think a small patch of ice such as was present in the instant case, admittedly not covering the entire sidewalk and having existed but a few hours at most,

is a public nuisance. If such were the case, then during the course of an average winter, there would be literally thousands of public nuisances in the city of Duluth alone, not to mention other cities within this state. It is presumed that in defining a public nuisance the legislature had in mind the climatic conditions which exist in this state, the difficulty which ensues during the wintertime because of intermittent snows, freezes, and thaws, and the likely probability that nearly every sidewalk in a large city must be partially covered with ice and snow many times during a winter season. It is not fanciful nor is it arbitrary to suppose that in drafting this statute the legislature had these factors in mind. Most rules of law are fashioned to meet the needs and conditions of everyday life and are not intended to be absolute and finite.

The authorities cited by plaintiff all involve somewhat different situations and need not here be noted. The bare facts of this case are a sufficient exposition of the infeasibility of plaintiff's argument.

(b) Section 414 of the building code of the city of Duluth provides:

"All buildings shall be kept provided with proper metallic downspouts and eave or cornice gutters for conducting water from the roof to the ground, sewer or street in such manner as shall protect the walls and foundations of the buildings and the walls and foundations of adjoining buildings from damage, and in no case shall water from roofs, roof projections, walls or cornices be allowed to flow upon the sidewalks, but shall be conducted by drain pipe or pipes to sewer, or under sidewalk to the gutter when no sewer exists."

The court excluded this from the jury's consideration on the grounds that it had no bearing on the issues. Plaintiff claims that this section is applicable to the case at bar, that defendant bank violated the same and hence is guilty of negligence as a matter of law under the doctrine of Mechler v. McMahon, 184 Minn. 476, 239 N. W. 605. We are inclined to agree with the trial court that this section of the building code properly was withheld from the jury, for we think it has no application to the case at bar. The prohibi-

tion of this section is against projecting water from downspouts across and over the sidewalk. The first half of the section deals with conducting water from the roof to the ground with proper downspouts; and the second half, beginning, "and in no case shall water from roofs, roof projections, walls or cornices be allowed to flow upon the sidewalks," has to do with disposal of water from downspouts after it reaches sidewalk level. Admittedly this section is somewhat ambiguous as to its precise meaning, but it will be noted that the words "drain pipe or pipes" are used near the end of the section, apparently in contradistinction to the previously used words "downspouts" and "gutters." This leads to the conclusion that the prohibition against permitting water to flow on the sidewalk is intended to apply only after the water has been conducted down from the roof in "downspouts," at which stage it must be run into "drain pipes" and not be allowed to flow on the sidewalk. Consequently, as we interpret it, this section of the building code had no application and properly was excluded.

The question of defendant's negligence in general was submitted to a jury under fair and proper instructions, and they found for defendant bank. This finding is supported by the evidence and must stand. Since the building code properly was withheld from the jury, it manifestly was not error to exclude evidence of structural changes in defendant's bank building required to effect a compliance with § 414 of the building code.

Order affirmed.