MABEL E. AND WILLIAM F. KELLEHER v. CITY OF WEST ST. PAUL.[1]

February 15, 1935.

No. 30,264.

[1]Reported in 258 N. W. 834.

Harold E. Stassen, Elmer J. Ryan, Edmund C. Meisinger, and Charles P. Stone, for appellant.

Sidney A. Perkins, for respondents.

HOLT, JUSTICE.

In a fall upon a sidewalk in the city of West St. Paul, plaintiff Mabel G. Kelleher fractured both bones in her right leg near the ankle. She and her husband sued the city, alleging that the injury received by the wife was due to the neglect of the city in that ice and packed snow had been allowed to form and remain in ridges and slopes on the sidewalk, causing her to slip and fall. The husband's suit was for consequential damages. The two actions were tried as one and a verdict returned in favor of each plaintiff. Defendant's motion in the alternative for judgment *non obstante* or a new trial being denied, judgments were entered on the verdicts, and defendant appeals therefrom.

The accident occurred on the sidewalk on the east side of Smith avenue in the defendant city, about 50 feet south of Annapolis street. On that corner, fronting on Smith avenue, is a grocery store and meat market 50 feet in width. South of this store is a vacant lot 28 feet in width, and south of that a hardware store. There is a cement sidewalk 12 feet wide in front of these stores and the vacant lot. The accident to Mrs. Kelleher occurred about noon on February 13, 1933. The evidence is that the temperature had been zero and lower for two or three weeks prior thereto. The day before Christmas, 1932, it had rained and sleeted, necessitating the sprinkling of ashes and sand on this and other sidewalks of the city, and on Christmas day there was a heavy fall of snow with a sudden drop of temperature. It also appears that the snow and ice were removed from the sidewalk in front of the stores, except over the curb, but that only the loose snow was removed from the sidewalk in front of the vacant lot, and that only to the width of about six feet along the center of the walk. At no point in this six-foot strip was the cement surface of the sidewalk visible.

The ice and hard snow above the cement surface was variously estimated at from one to three inches along the pathway of the six feet and where this pathway joined the sidewalk in front of the grocery store. The length of the slant from the cement surface of the sidewalk, in front of the grocery store, south up to the level of the six-foot shoveled path in front of the vacant lot, was variously estimated at from 6 to 18 inches. At the time mentioned Mrs. Kelleher walked south on Smith avenue along the sidewalk in front of the grocery store, passed over the six-foot path in front of the vacant lot, entered the hardware store, purchased a can of bronzing liquid, and retraced her steps north. When she came opposite the line dividing the vacant lot from the grocery store she slipped and fell, striking on her right side. Both bones of her right leg were fractured at the ankle, involving some bones in the joint. It appears that it had been snowing that morning, but had stopped just before the accident. Some witnesses say that there was a blanket of snow; others call it an eighth of an inch snowfall. There is no dispute that she fell so that her head was about a foot west of the south wall of the grocery store, with her feet extending northwesterly.

The contentions of defendant are: (a) That the evidence does not prove actionable negligence; (b) that contributory negligence appears; (c) that the court erred in certain remarks and questions put to a witness to defendant's prejudice.

On the first proposition it has been the established law that in this latitude the mere slippery condition of a sidewalk because of snow and ice thereon does not show actionable negligence on the part of the municipality. Henkes v. City of Minneapolis, 42 Minn. 530, 531, 44 N. W. 1026, 1027, where it is said:

"An unbroken line of authorities holds that mere slipperiness of a sidewalk by either ice or snow is not a defect for which cities are liable; that their obligation to keep their streets in a safe condition does not extend to the removal of ice which constitutes no other defect than slipperiness."

It is true that if a ridge or ridges of ice have formed on a sidewalk, either from faulty construction or otherwise, which may be

490

found to be an obstruction or pitfall and has so remained for sufficient time to impute notice to the city, liability may be found. Such were the cases of Smith v. City of Cloquet, 120 Minn. 50, 139 N. W. 141; McManus v. City of Duluth, 147 Minn. 200, 179 N. W. 906; McClain v. City of Duluth, 163 Minn. 198, 203 N. W. 776; Niemi v. Village of Hibbing, 175 Minn. 366, 221 N. W. 241. But such defects must be so rough or ridgy that that condition constitutes a menace to reasonably safe travel. We have also a case where the difference in levels occurred because of one abutting owner keeping his part of the sidewalk clear while no snow was removed from the sidewalk of the adjoining lot, thus creating an abrupt rise of from two to eight inches of snow and ice from the cleared walk, which could be classified as an obstruction. Olson v. City of St. Paul, 141 Minn. 434, 170 N. W. 586. We have also Genereau v. City of Duluth, 131 Minn. 92, 154 N. W. 664, where, on a level block, the easterly part of the sidewalk was first built and then the westerly part was laid three inches below the level of the first and the two parts joined by a 12-inch slant. The plaintiff in that case came to the place in the evening when the light was dim; [131 Minn. 94] "a path led down to the sidewalk near the slant, and, when snow accumulated and thawed, water flowed in from this path and also from the walk over the slant therein, forming, when it again froze, such uneven ridges and depressions that walking thereon became exceedingly dangerous, and this condition had existed for several weeks prior to plaintiff's injury." There faulty construction of the sidewalk entered into the case and produced ridges and depressions. In Dory v. City of Duluth, 103 Minn. 154, 114 N. W. 465, a faulty construction caused a depression to form in the walk, which was held to warrant the jury in holding the city liable to the plaintiff who fell because thereof. Where the city causes the dangerous condition, although it consists only in slipperiness, it is responsible, as held in Roberts v. Village of Buhl, 160 Minn. 398, 200 N. W. 354. In the instant case much was made by plaintiff in respect to the accumulation of snow on or about the curb by shoveling the snow from the walk toward the curb and by snowplows pushing the snow from the street against the curb. It

might well be that there was an encroachment of part of the walk by artificial means, but such encroachment had nothing whatever to do with the conditions existing where plaintiff fell. The evidence is uncontradicted that whatever "artificial" effort had been exerted thereon had been to keep the place free of ice and snow. Every witness conceded that the little slant at that place came from wear and effort to clean off the loose snow.

The slant itself cannot, upon the evidence, be regarded as a ridge or depression creating a dangerous situation. Nor were there ridges or depressions on the slant upon which plaintiff claims she fell. She testified that when, after her fall, she was carried into the grocery store and seated so that she could see the place of the accident, she saw where her left foot, in sliding, removed the thin blanket of newly fallen snow. There was some evidence that autos, in turning on the street, went over the curb and onto the middle of the sidewalk in front of the vacant lot and that the threads of tires were discernible in the ice and snow; but plaintiff's husband testified that these tire marks were no nearer to the place where plaintiff fell than two feet. Plaintiff took no notice of the condition of the sidewalk across the vacant lot either in going to the hardware store or in returning therefrom. She testified:

Q. "Did you observe the walk as you went along?

A. "No, sir; I did not look down. I just went on my way. * * *

Q. "Did you watch the walk where you were walking?

A. "I just walked ahead, like anybody does. I did not look on the sidewalk and watch every step, I just walked along ordinary, like anybody does. * * *

Q. "As you walked by the vacant lot did you observe anything unusual there?

A. "I never thought anything about it because I was not in the habit of looking. I was just going about my business.

Q. "You walked there the same as anywhere else?

A. "Well, I did not notice any difference. I did not take notice. I had nothing to make me take notice at that time."

It is hardly possible that a person could thus walk twice over this walk and not notice if there were dangerous ridges or de-

pressions. Her estimates as she, after the fall, in intense pain, viewed the sidewalk from the window of the grocery store are scarcely of value. Admittedly, there was a thin blanket of newly fallen snow all over the sidewalk in front of the store as well as over that in front of the vacant lot. Yet she testified that she could see from where she sat that the thickness of the ice in the center of the walk where she fell was:

"About half an inch—two inches, it might have been a little more or a little less—a little more. I just did not measure it * * *.

Q. "Was that clear ice, Mrs. Kelleher?

A. "No, sir, it was ice and snow. * * *

Q. "You could tell by looking out that window that there was ice all the way along that walk from one inch to an inch and a half thick?

A. "From the top of this slope—it was about two inches at the top of this slope."

To be sure, both she and her husband say that the walk was rough. The degree of roughness is not given, and the roughness did not cause her to slip. Furthermore, it is demonstrable that ridges or depressions could not exist. There had been severe weather for two weeks or more and frequent snowfalls. Her own as well as defendant's witnesses testified that after every snowfall of any consequence the snow was shoveled off the walk across the vacant lot. The walk was much traveled. In that situation it must follow that any irregularities in the ice from imprints before it froze would be filled in and tramped down to comparative smoothness. Plaintiff's witness Dittman, testified:

"They did not always shovel it off in the morning, whatever could be gotten off was shoveled off; maybe they would come out at noon and in the afternoon and shovel the walk, and it stayed on that long.

Q. "So after every snowfall loose snow was shoveled off that walk?

A. "Yes."

He testified that there were no bare spots in that walk, and the depth of the ice and hard snow ranged from an inch to an inch and a half. Mr. Dittman worked in the grocery store and was the one who saw plaintiff fall and helped to carry her into the store. Plaintiff's husband placed the thickness of the ice at the top of the slope near the property line of the grocery store at an inch, gradually increasing toward the curb; "the surface of the ice * * * was rough; it was not exactly smooth"; and that the surface of the slant was smoother than this other part, but there was more ice in it. Harold Ohmann, also plaintiff's witness, who shoveled the snow off this sidewalk, testified that the condition over this walk was one which usually occurs with traffic over snow and ice— "it was not smooth.—it was not rough." Another witness for plaintiff, the owner of the hardware store, estimated the snow and ice to have been two inches deep at the top of the slope where plaintiff claimed she slipped, and the width of the slant or slope from the shoveled sidewalk to the top of the slope to have been from six to eighteen inches. Other witnesses for plaintiff estimated the depth of the snow and ice at the top of the slope to have been from an inch to an inch and a half where the accident happened. As bearing on the claim of roughness and ridges, we have plaintiff's testimony that she passed in front of the vacant lot twice before she fell and felt or sensed no unevenness of surface so that she did not deem it necessary even to glance at the walk. Besides plaintiff, two of her witnesses located the exact place of her fall to have been on the line separating the vacant lot from the grocery store and so near the south wall of the store that her head was about a foot west of the wall, and the testimony is all to the effect that it was nearer the store front than the middle of the walk. So we are not concerned with the depth of the ice or the ridges nearer to the curb or the cause thereof. It is true that the sidewalk when bare slopes slightly down toward the north, but the grade is so slight that no witness gave it any significance. If where a sidewalk in front of one lot is kept free from snow and ice and in front of the adjoining lot the snow is allowed to melt and freeze so that the walk is covered with ice and hard snow to the depth

of two inches, a city should be held responsible for the slight slope which results from traveling over the dividing line of the different levels, it is virtually made an insurer against all accidents. We think the evidence does not warrant a finding that the slight slope where plaintiff fell was due to any negligence of the city, and that the slope was not of such a character that it could be considered an obstruction to ordinary travel over the sidewalk. The causes of action were carefully tried and all available evidence adduced, and it is not likely that another trial would present a picture where the city could be held responsible for Mrs. Kelleher's misfortune. So there is no need to consider the question of her contributory negligence.

In passing we think the errors assigned on certain remarks of the court during the trial and his questions put to a witness are clearly without merit.

The judgments are reversed with direction to enter judgments for defendant notwithstanding the verdicts.

JULIUS J. OLSON, JUSTICE (dissenting).

As I read the record, a fact question was presented as to the condition of the sidewalk at the place where plaintiff fell and suffered the injuries of which she complains. The question of fact was not limited to that of slipperiness alone but also whether the wedge-shaped incline from that part of the sidewalk fronting the vacant lot to and upon the property line fronting upon the grocery store was of such nature as to warrant the triers of fact in finding that the city had not exercised reasonable care. It is true, as stated in the opinion, that a municipality is not liable for injuries resulting from mere slipperiness due to ice or snow, but it is equally true that liability follows if the municipality "negligently permits an accumulation of ice and snow to remain on a sidewalk for such a length of time as to cause the formation thereon of slippery and dangerous ridges, depressions, and irregularities in the surface." 4 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 6829, and cases under note 88. There is evidence that plaintiff "slipped on a spot directly in front of the building line, in the

center of the sidewalk" and upon "this slope of ice"; also that the snow and ice had been removed from the sidewalk fronting the grocery store but that the snow fronting upon the vacant lot had not been so removed but had been permitted to remain, to very considerable extent at least, to be trampled down by people who walked on it; that as a consequence this area was "rough and uneven" and that the sidewalk in front of the vacant lot was packed with snow and ice from one to ten inches thick, full of rough ridges and depressions from people walking over the same when the snow was soft. This condition had existed over a period of many weeks. A witness testified that he slipped and fell at the same place on the forenoon of the next day. True, he was not injured, but that was simply his good fortune. The condition of this particular wedge-shaped spot was the same as on the day of plaintiff's accident except that there had been a slight fall of snow the night before, thus covering the icy surface and hiding from view the dangerous condition below. That is exactly what had happened before plaintiff met with her accident. Nor should we lose sight of the fact that the sidewalk itself sloped in the same general direction as the icy wedge, thus increasing the incline and consequent risk.

Defendant's counsel brought out on the cross-examination of one of plaintiff's witnesses that he (the witness) immediately after his fall at this place said: "If somebody doesn't clean that sidewalk somebody is going to break their neck." That to my notion is the condition existing and concerning which plaintiff has a right to complain.

The verdicts are moderate in amount. There is no complaint of excessiveness. The triers of fact have determined the fact issues in favor of the respective plaintiffs. I can see no reason why we should interfere. In my view the judgments here involved should be affirmed.

DEVANEY, CHIEF JUSTICE.