MARY JOAN THOMSEN v. JOHN REIBEL AND ANOTHER.[1]

February 20, 1942.

No. 32,983.

*Robins & Davis,* for appellant.
*Sexton, Mordaunt, Kennedy & Carroll,* for respondents.

JULIUS J. OLSON, JUSTICE.

Plaintiff, a little girl five years of age, was injured on May 15, 1940, when she fell through the door of defendants' five-passenger Ford taxicab to the street and was hurt. The court submitted to the jury the question of defendants' negligence and plaintiff's contributory negligence. There was a verdict for defendants. Plaintiff's alternative motion for judgment or a new trial was denied,

[1]Reported in 2 N. W. (2d) 567.

and she appeals. The question presented is whether the record furnishes sufficient proof to make plaintiff's contributory negligence a fact issue.

Plaintiff and seven other youngsters were on their way to their respective homes from school (referred to by plaintiff as "Kindygarden"). When they started from the schoolhouse there were six children in the back seat and two in front with the driver. Two of the children in the back seat and one of those in front had been taken to their homes. As they proceeded, the children "were playing around and pushing each other around," as is customary with youngsters of that age. In their scuffling, so plaintiff testified, another little girl, Sabra Brown, "put up her feet and Joanne went to jump over and she pushed me and I fell out the door." "She was trying to jump over Sabra's feet." Plaintiff claims that she was not playing but was sitting in the seat next to the door, which suddenly opened because of the impact and caused her to fall out, resulting in the injuries for which this action was brought. The little girl's testimony is clear and unequivocal as to what occurred immediately before the accident. The incident seems to have been clearly impressed upon her mind.

Sabra Brown, also a five-year-old youngster, testified: "I had my feet up and Mary Joan [plaintiff] was trying to get over them to get through there." Upon being asked whether it was Mary Joan or Joanne, she said:

"I don't know if it was Joanne or Mary Joan.

Q. "Will you tell what happened?

A. "Well, Joanne or Mary Joan, I don't know which one it was, they were trying to get over my feet and I wouldn't let them and then one of them got over my feet, then I moved my feet over in front of where Mary Joan was then Mary Joan was over there and she tumbled out of the thing when she got over."

Sabra's testimony also disclosed that immediately prior thereto another youngster, Jimmie Carroll, "was trying to close it [the door] tighter, I think."

Q. "Why was he trying to close it tighter?

A. "I think it was kind of loose and it was rattling. * * *

Q. "What is this about the rattling door; just what is that about that?

A. "Jimmie Carroll wasn't monkeying with the door when Mary Joan got a hold of my legs she bumped the door and it opened and she fell out."

There was no testimony by any of the other children. Nor did the driver contradict plaintiff or Sabra as to what took place. In substance, this is all the evidence upon which defendants base their theory that contributory negligence is in the case.

1. We find it difficult to connect, as a link in the chain of causation, the conduct of plaintiff with the accident. Her testimony is natural and reasonable. Sabra's recollection of what took place cannot be said to overturn Mary Joan's testimony. She frankly said, "I don't know which one it was * * * trying to get over my feet." The burden of proving contributory negligence was upon defendants. That burden has not been met. And since no one can tell upon which issue the jury based its verdict, there must be a new trial.

The question of contributory negligence on the part of children of such tender years as plaintiff is always a difficult one to solve as a matter of law. In Eckhardt v. Hanson, 196 Minn. 270, 275, 264 N. W. 776, 778, 107 A. L. R. 1, we said: "Jurors, by virtue of their office, are competent to judge whether or not a child has exercised a degree of care commensurate with its age, capacity, and understanding." Our cases are there reviewed, so we refrain from again reviewing them. Usually the question is one of fact, as it was in the cited case, but such it is not here.

2. Plaintiff's counsel in their brief bitterly assail the language chosen by the court in its general charge. The basis for their criticism is that the language used, while proper and suitable for members of the legal profession, was woefully unsuited for laymen; that it was misleading and likely to cause confusion. Defendants say the court cannot justly be criticized, since the lan-

guage, in substance, is "taken from Restatement, Torts [Negligence] §§ 282, 430, 431." We refrain from quoting the challenged portions of the charge, for upon examination we find that the criticism made by plaintiff's counsel is not wholly unjustified. We think the language used by the writers of the Restatement is not the kind which the average juror would be likely to understand. Trial judges especially must bear in mind that they are dealing with laymen when they are trying jury cases. Their language should be such as laymen understand. "Long, vague, fuzzy-meaning words are dangerous business." Herbert D. Laube in 25 Cornell L. Q. 581, 583, wherein the reviewer takes in hand Professor Rodell's book *Woe Unto You, Lawyers*. His parting shot is that (*Id.* 586) "the natural enemy of any subject is the professor thereof." Both the book and the cited review afford interesting reading.

We know of no better definition of the law of negligence and proximate cause than that given by Mr. Justice Mitchell in Christianson v. C. St. P. M. & O. Ry. Co. 67 Minn. 94, 97, 69 N. W. 640, 641.

"The law is that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was liable to result in injury to others, then he is liable for any injury proximately resulting from it, although he could not have anticipated the particular injury which did happen. Consequences which follow in unbroken sequence, without an intervening efficient cause, from the original negligent act, are natural and proximate; and for such consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which did follow."

In view of another trial, we think it appropriate to suggest that "statements of the law found in reported decisions or in texts are not always good for juries and sometimes they are misleading." Stanger v. Thompson, 153 Minn. 488, 491, 190 N. W. 897; 6 Dunnell, Dig. & Supp. § 9781, and cases under note 49.

Order reversed and new trial granted.