JOHN SQUILLACE, JR. v. VILLAGE OF MOUNTAIN IRON.
JOHN SQUILLACE v. SAME.[1]

December 13, 1946.

Nos. 34,214, 34,215.

---

[1]Reported in 26 N. W. (2d) 197.

10

W. O. *Bissonett* and *Ben P. Constantine,* for appellant.
*Stone, Manthey & Carey,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Actions against the village of Mountain Iron for damages arising out of an accident to John Squillace, Jr. on March 4, 1943, at about 4:00 p. m. that day. At the close of the evidence, defendant moved for directed verdicts, which motions were denied. The cases were submitted to the jury and verdicts returned in favor of John Squillace, Jr. in the sum of $20,500 for injuries, and for John Squillace, his father, in the sum of $2,500 for medical expenses. Defendant's motions for judgment notwithstanding the verdicts or for a new trial were denied. Judgments were entered December 7, 1945, from which defendant appeals.

For convenience, John Squillace, Jr., who was six years of age at the time of the accident, will be referred to herein as the plaintiff.

The facts, which are undisputed, are as follows: Railroad street is the main street in the village of Mountain Iron and runs in an easterly and westerly direction. On the northeast corner of its intersection with Second avenue in the village there is located a gasoline service station with a driveway extending therefrom over the sidewalk on the north side of Railroad street. The driveway commences some 86 feet east of the northeast corner of the inter-

section. It is 37½ feet wide, but at the time of the accident only 12 to 15 feet thereof had been cleared of snow for vehicular traffic to and from the station.

For about six weeks prior to March 4, 1943, the public sidewalk on the north side of Railroad street extending east of said driveway was clogged and obstructed with snow and ice to a height of four to six feet, making it impassable for pedestrian traffic. The snow had been piled on and south of the sidewalk by the snowplow used by the state highway department to clear Railroad street. It created a high bank of snow and ice which sloped down over the curb and extended on a slant into Railroad street for a distance of two or three feet. This bank, sloping downward into the street, had existed for at least two or three weeks prior to the date of the accident. In consequence, pedestrians desirous of traveling east on Railroad street on the north side thereof were compelled to leave the sidewalk and walk in the street over this snow-and-ice slope for some distance to the east of the driveway.

For some time prior to the date in question, it had been the custom of the school bus taking grade-school children to their homes in Mountain Iron and vicinity to stop at specified regular points at certain scheduled times along Railroad street for the purpose of discharging its passengers. One such point was the driveway of the oil station above referred to, where a number of the school children left the bus each day at about the same hour in the afternoon.

At the time of the accident, pursuant to schedule, the bus had been parked facing west immediately adjacent to the cleared portion of the driveway to discharge its passengers. The rear of the bus then extended a number of feet east of the cleared portion of the driveway. Several children, including plaintiff (then six years of age), left the bus at this point by the front right exit. Plaintiff's home was some blocks south and east of the intersection. To return there, he started to walk to the east along the right or north side of the bus. The bus driver testified that the right side of the parked bus was "right up close to the [snow]bank" on the north

side of Railroad street, "approximately two feet" from it. This left only a narrow way through which the boy could pass. Since the snow-and-ice bank slanted into the street a distance of two to three feet from the north curb, the fair inference is that in passing between the bus and the snowbank plaintiff was required to walk on the slope extending into Railroad street. As he walked along this passageway after the bus had started, he slipped and fell and slid to the south under the rear wheels, which passed over his body. It is to recover for the resulting serious injuries that these actions were instituted.

The material portions of the trial court's charge with reference to negligence were as follows:

"No negligence can be charged against the Village of Mountain Iron solely because it did not plow out the sidewalk on the east end of the block where the bus stopped and where the accident occurred. * * *

"Ordinarily, however, it does have a bearing upon the question as to the care they should use in keeping the streets passable when they fail to plow out their sidewalks.

"Ordinarily, where there are sidewalks for pedestrian travel which are passable, a municipality is under a very slight duty, if any, to keep its streets in reasonably safe condition for pedestrian travel except at crosswalks; however, if the sidewalks are impassable so that pedestrians must walk in the street, a municipality is under a duty to keep its streets in the vicinity of the said sidewalks in reasonably safe condition for pedestrian travel; if from the evidence in this case you find that the sidewalks east of the entrance to the Sinclair Oil Station were obstructed so that they were not reasonably available for pedestrian travel and as a result pedestrians did travel on Railroad street, and if you find that the Village of Mountain Iron did not exercise reasonable care in keeping said street in the vicinity of the sidewalks east and west of the entrance to the Sinclair Oil Station reasonably safe for pedestrian travel, then you may find the Village of Mountain Iron negligent.

"\* \* \* a municipality can be held liable if it allows its streets to get into such condition where it might well foresee that an accident might occur to persons lawfully using the streets who are themselves exercising due care for their own safety. The fact that the defendant could not anticipate or foresee that this particular accident or one like it would occur does not excuse the defendant from liability if because of the negligence of the defendant a condition was created on the street that was likely to cause an accident to someone.

"If you find that the defendant Village was negligent in allowing this ridge of sloping packed snow or ice to remain on the street in question under the existing conditions and that this was a direct or proximate cause of the accident, then the defendant is liable unless the boy, John Squillace, was also negligent and his negligence was a proximate contributing cause of the accident."

The court followed this with instructions as to the rules governing contributory negligence applicable to a boy of the age of John, as follows:

"On the question of the negligence of the boy, John Squillace, you must take into consideration his age and capacity. Young people are not held to the same degree of care for their own safety as an adult person, but a child of six years of age is required to use some care for his own safety but is only held to the degree of care that is commonly used by children of like age and capacity."

On appeal, defendant contends in substance:

(1) That the evidence fails to disclose that plaintiff actually fell or slipped on an icy ridge or slant, and hence fails to establish negligence on the part of the defendant; (2) that the evidence fails to disclose that defendant failed to exercise reasonable care in maintaining Railroad street in a reasonably safe condition for vehicular and pedestrian traffic; (3) that the evidence shows conclusively that the injuries were caused solely by the negligence of the bus driver or by the contributory negligence of plaintiff; and (4) that the court erred in instructing the jury that *it was the duty*

of defendant to keep its streets in the vicinity of the sidewalk in reasonably safe condition for pedestrian travel.

■ We believe that the evidence, which is undisputed, reasonably sustains a finding that plaintiff slipped on the embankment slanting into Railroad street some two or three feet from the curb thereof. At the outset, the rule is well established that the view of the evidence most favorable to the plaintiff must be accepted (Merritt v. Stuve, 215 Minn. 44, 9 N. W. [2d] 329), and that such evidence must be given the benefit of all reasonable inferences. See, Kundiger v. Metropolitan L. Ins. Co. 218 Minn. 273, 15 N. W. (2d) 487. The evidence here clearly establishes that the artificial accumulation of ice and snow created by the use of the snowplow on Railroad street caused the formation of this slope extending into Railroad street for a distance of two to three feet from its curb and for a substantial distance to the east of the driveway. When the bus stopped to discharge its passengers at a point not more than two feet from the snow embankment it left a narrow passageway which extended across the slope and over which plaintiff had to pass. While walking through this passageway and over such slope plaintiff slipped and fell under the bus. The fact that he fell in a southerly direction and that all witnesses agreed that the slope of ice and snow extended into the street for two or three feet, coupled with the nature and direction of his fall and the position of the bus, all give rise to the reasonable inference that plaintiff slipped because of the icy slope while passing over it, and hence justified a finding that the slope was the proximate cause of the accident.

■ Defendant's duty, insofar as it relates to its streets and sidewalks, has been clearly defined in the prior decisions of this court. We have repeatedly held that a municipality, which has the exclusive control of its streets and sidewalks, is required to exercise reasonable care to keep them in a reasonably safe condition for pedestrians using them. 4 Dunnell, Dig. & Supp. § 6818. Insofar as this obligation relates to ice and snow on the sidewalks, the rule is set forth in 4 *Id.* § 6829, as follows:

"The duty of the city to keep its walks in a safe condition for travel is not limited to structural defects, but extends as well to dangerous accumulations of ice and snow. The necessity and importance of the rule depend largely upon the latitude. The only rule of general application, therefore, must be that of reasonable care in view of climatic and other conditions."

If snow accumulates and results in ruts or similar conditions and the municipality has conclusive or actual notice thereof by virtue of their existence for a substantial length of time, then the obligation falls upon the municipality to remedy the situation or to respond in damages for its failure therein. It is true that we have excepted from this rule any obligation in connection with smooth glare ice and have held that *"mere slipperiness* of a sidewalk by either ice or snow is not a defect for which cities are liable." (Italics supplied.)  Henkes v. City of Minneapolis, 42 Minn. 530, 531, 44 N. W. 1026, 1027.  Here, however, the liability does not rest upon the "mere slipperiness" doctrine, but rather upon undisputed evidence which established that the municipality had permitted its sidewalk to become so obstructed as to bar pedestrian traffic thereon and at the same time had permitted a slope comprised of ice and snow created by artificial means as the result of the operations of the snowplow to extend into the adjacent street, over which pedestrians, unable to use the sidewalk, were required to travel, and had permitted such slope to remain there for several weeks prior to the date of the accident.

We have held that such slopes and ridges may give rise to actionable negligence against a municipality when injuries are occasioned by falls thereon, and we have distinguished this type of defect from "mere slipperiness" defects.  Thus, in Genereau v. City of Duluth, 131 Minn. 92, 95, 154 N. W. 664, 665, we stated:

"* * * We conclude the evidence justified the charge.  In so doing we do not trench upon the rule announced in Henkes v. City of Minneapolis, 42 Minn. 530, 44 N. W. 1026, where it was held that the duty of a city in respect to care of its sidewalks did 'not

extend to the removal of ice which constitutes no other defect than slipperiness, there being no such accumulation of ice as to constitute an obstruction to travel, and no ridges or inequalities of such height, or lying at such inclination or angle as would be likely to trip passengers or cause them to fall.' "

See, also, Rasmusen v. City of Duluth, 133 Minn. 134, 157 N. W. 1088; Slindee v. City of St. Paul, 219 Minn. 428, 18 N. W. (2d) 128.

■ Likewise, it is immaterial that the conditions here were partially of artificial origin and were created, to some extent, by the state highway department in removing the snow from Railroad street pursuant to an agreement with defendant. This is made clear in Nichols v. Village of Buhl, 152 Minn. 494, 497, 193 N. W. 28, 29, wherein we stated:

"* * * If of artificial origin it is immaterial whether the result springs from acts or omissions of the officers and agents of the municipality, or from the acts of third persons. Where the conditions arise from the acts of third persons, whether the adjoining property owner or otherwise, there is liability on the part of the municipality, if the dangerous conditions were known to its officers having such matters in charge, or existed and remained for such length of time as to constitute constructive notice."

See, also, Roberts v. Village of Buhl, 160 Minn. 398, 200 N. W. 354.

■ It is true, the foregoing decisions relate to the obligations of a city with reference to its walks rather than to its streets. The obligations placed upon a municipality in keeping its walks reasonably safe for pedestrian travel might not necessarily be applicable insofar as its streets are concerned. Here, however, because of the failure of the municipality to clear the sidewalk which plaintiff ordinarily would have used in going to his home, it became necessary for him to use the street immediately adjoining it. Under such circumstances, it would seem that defendant was obligated to exercise the same degree of care with reference to streets which pedestrians were forced to use in lieu of sidewalks as that which would be applicable ordinarily to sidewalks. In substance we have

so held in Thoorsell v. City of Virginia, 138 Minn. 55, 58, 163 N. W. 976, 977, where we stated:

"* * * it is true that the use of the street outside of the sidewalk is primarily for traffic by teams and other vehicles, and the use of the sidewalk primarily for pedestrians, but pedestrians still have the right to use the street when the necessity arises. *It has never been held, to our knowledge, that they have not such right, or that the duty of a municipality to use reasonable care to keep the streets in a safe condition does not extend to making them reasonably safe for pedestrians who have occasion to be upon that portion of the street ordinarily traveled by vehicles.*" (Italics supplied.)

See, also, Barrett v. City of Virginia, 179 Minn. 118, 228 N. W. 350; Mathieson v. City of Duluth, 201 Minn. 290, 276 N. W. 222.

Here, the rule stated would seem particularly applicable, where the omissions of the municipality in effect forced plaintiff to take the course he followed in going to his home; where the condition existing was of long duration; and where defendant must have known that it was customary to discharge school children from the school bus at this point.

A municipality might reasonably anticipate that people walking on this street because they could not walk on the sidewalk would crowd as close to the sloping bank as possible to escape vehicular traffic. The fact that a municipality might not anticipate the *particular* form this accident was to take because of the aforesaid situation is immaterial. All the surrounding circumstances indicated that a situation and the factors such as existed here would, in all probability, sooner or later, result in some pedestrian falling on the sloping surface which the city had permitted to exist for a substantial time. As stated in 4 Dunnell, Dig. § 7008:

"* * * One is bound to anticipate and provide against what usually happens and what is likely to happen; * * *."

We are satisfied that this question was properly submitted to the jury. See, Thomsen v. Reibel, 212 Minn. 83, 2 N. W. (2d) 567;

18

Christianson v. C. St. P. M. & O. Ry. Co. 67 Minn. 94, 69 N. W. 640.

■ We feel that the trial court in its charge to the jury correctly stated the rule governing the contributory negligence of plaintiff. It has been repeatedly set forth here. See, Shotts v. Standard Oil Co. 181 Minn. 386, 232 N. W. 712; Thomsen v. Reibel, 212 Minn. 83, 2 N. W. (2d) 567, *supra;* Deach v. St. Paul City Ry. Co. 215 Minn. 171, 9 N. W. (2d) 735. There is nothing which would compel an instruction that a child of the age of plaintiff was guilty of negligence here as a matter of law.

■ Likewise, we find no reversible error in the court's instructions on the duties and obligations falling upon defendant with reference to its sidewalks and streets. It is true that at one point in the instruction the court used the language: "* * * a municipality is *under a duty* to keep its streets in the vicinity of the said sidewalks in reasonably safe condition * * *." This is not strictly the rule governing the obligations falling upon a municipality. As previously indicated, the duty in this respect is to exercise reasonable care to keep its streets and sidewalks reasonably safe for public travel. However, examination of the instructions indicates that on at least two different occasions in its charge the court gave the correct rule of law applicable. Thus, in the paragraph under attack, the court continued and stated:

"* * * if you find that the village of Mountain Iron did not exercise *reasonable care* in keeping said street in the vicinity of the sidewalks east and west of the entrance to the Sinclair Oil Station *reasonably safe* for pedestrian travel, then you may find the village of Mountain Iron negligent." (Italics supplied.)

Further, in a subsequent portion of the charge the court stated:

"The village is not an insurer of the safety of its streets for pedestrian travel but is required to use *reasonable care* in keeping its streets in *reasonably safe condition* for travel over them." (Italics supplied.)

When the charge is considered in its entirety, it is clear that the jury could not have been misled by the brief misstatement, not

called to the attention of the court at the time. See, Hill v. N. P. Ry. Co. 210 Minn. 190, 297 N. W. 627; Curran v. C. G. W. R. Co. 134 Minn. 392, 159 N. W. 955; Slindee v. City of St. Paul, 219 Minn. 428, 18 N. W. (2d) 128, *supra*.

Affirmed.