BARBARA CHAPMAN, A MINOR, BY JAMES CHAPMAN, HER FATHER AND NATURAL GUARDIAN,
AND OTHERS v. GUSTAVE CARLSON.
OLIVER ISAACS AND ANOTHER v. SAME.

85 N. W. (2d) 67.

August 2, 1957—Nos. 37,077, 37,079.

*Hvass, Weisman, Peterson, King & Schwappach,* for appellants Chapman.

*Gleason, Ward, Orff & Johnson,* for appellants Isaacs.

*Meagher, Geer, Markham & Anderson, David W. Nord,* and *O. C. Adamson II,* for respondent.

THOMAS GALLAGHER, JUSTICE.

These are two actions for injuries and damages sustained by plaintiffs on April 21, 1954, in escaping from a fire on the second floor of a two-story structure located at 2801 and 2803 Riverside Avenue, Minneapolis, and belonging to defendant, Gustave Carlson, their landlord.

Plaintiffs claim that the injuries and damages sustained were the proximate result of defendant's negligence (1) "in the care, maintenance, operation and layout" of the common hallways of the structure and in particular in failing to remove all furniture, rubbish, and other

debris which had accumulated therein; and (2) in failing to provide two separate, independent, or remote means of egress from their apartments in accordance with the ordinances of Minneapolis and the laws of Minnesota.

The jury returned verdicts in favor of defendant. These appeals are from an order of the trial court denying plaintiffs' motions for a new trial.

Minneapolis City Charter and Ordinances (Perm. ed.) 1:2, is substantially identical with M. S. A. 460.01, et seq., known as the Housing Act. The sections relied upon by plaintiffs provide as follows:

1:2-225. "Every multiple-dwelling hereafter erected exceeding one story in height, and every building occupied above the first floor as a dwelling, shall have at least two independent ways of egress which shall be located remote from each other and each independent way of egress * * *, the second way of egress shall be directly accessible to each apartment, group or suite of rooms without having to pass through the first way of egress. * * *"

1:2-506. "* * * multiple-dwellings erected prior to November 2, 1920, *where it is not practicable to comply* in all respects with the provisions of section 225 * * *, the Inspector of Buildings shall make such requirements as may be appropriate to secure the proper means of egress from such multiple-dwellings for all the occupants thereof. * * *" (Italics supplied.)

At the trial defendant submitted evidence to the effect that he had not retained control of the common hallways; that he had instructed plaintiffs to do their own cleaning therein; and that the furniture, rubbish, debris, and other items in which the fire appears to have originated were left there by, or belonged to, the tenants. He admitted that at times, when requested by the tenants, he had undertaken minor repairs in parts of the structure, but asserted that there was no agreement upon his part to do so. He denied that the structure violated the described ordinances and submitted evidence to show that, if the means of egress were not in compliance therewith, it was not practicable to otherwise alter the building so as to come within

their terms. Evidence was submitted which indicated that the furniture, rubbish, and debris, accumulated in the hallways, belonged to the Ryders, tenants on the property.

Plaintiffs denied that they were to maintain the hallways or to keep them in repair, but evidence was submitted to show that plaintiffs and other tenants from time to time engaged in cleaning them. It was conceded that the premises had been erected prior to 1920 and that the inspector of buildings had never required alterations therein to provide any different or additional means of egress.

At the close of the evidence, the trial court submitted the issues of negligence described, and instructed the jury with respect thereto as follows:

"* * * generally speaking, in the absence of an agreement the landlord will be presumed to have retained control of the halls used in common by different occupants of his property * * * but it is only a presumption * * * that * * * would be rebutted and cleared away if you find there was evidence to show that that was not the arrangement at all. * * * on the other hand, * * * where there is no agreement to repair leased premises by the landlord, and he is not guilty of any fraud or concealment as to their safe condition and the defects in the premises are not secret but obvious, the tenant takes the risk of their safe occupancy and the landlord is not liable to him for injuries sustained by reason of the unsafe condition of the premises.

"* * * it is for you to say what is the situation * * *. Did the landlord retain control? If he did, he is governed by that first rule of law I gave you. If he did not retain control, then the second rule of law which I have just read to you applies."

Immediately following the foregoing instructions with reference to the applicable law as to common hallways, the court instructed the jury with respect to the Housing Act as covered by the above ordinances and statutes. After reciting the pertinent parts thereof, the court stated:

"* * * the claim is made that Mr. Carlson violated certain provisions of that Housing Act. He denies that. * * *

*       *       *       *       *

"Now, remember * * * that this building was built prior to November 2, 1920 * * * it is contended that it is practicable even if the building was erected prior to 1920 * * * to make it comply with Section 225 * * * and that is another question that you have to decide.

\* \* \* \* \*

"* * * If you find, of course, that the landlord complied with Section 225, that is, if he had two separate and independent exits remote from each other, that ends it right there * * * but assuming that he had not done that * * * could he have done that in a practicable manner? * * * It is again for you to say whether there was a compliance or was not a compliance by the landlord with Section 225, or whether or not it was practicable for him to do so, in the event you find that he had not complied with the statute. * * *

"* * * when you are debating those questions * * * you will take into consideration all of the facts and circumstances in the determination of that * * * keeping in mind the law as I have given it to you * * *.

\* \* \* \* \*

"* * * if you find * * * that the defendant violated the statutes in question, then that would be negligence and it would be what they call 'negligence per se'. That means that it would be negligence in and of itself. * * *

"Then you come to the question of * * * contributory negligence, and you examine the entire record * * * as it was presented here, and then you ask yourselves the question: 'Were they [plaintiffs] negligent?' * * * 'Did their negligence contribute proximately to the happening of this thing?' If you found that it did, then they could not recover * * * your verdict would have to be for the defendant."

Following these instructions, counsel for plaintiffs objected to the submission of the issue of contributory negligence and further objected to the instructions as follows:

"* * * Plaintiff Chapman excepts to that part of the Court's charge inferring or connecting the lease, oral lease arrangement with any liability under the ordinances having to do with fire escapes and halls * * *.

\* \* \* \* \*

"* * * Plaintiffs Isaacs join in the exceptions noted by the plaintiffs Chapman and add that we separately except to the submission to the jury of the issue of relinquishment of control of the halls, except insofar as the same relates to cleaning and sweeping."

On appeal it is contended (1) that the instruction that, if the jury determined that defendant had not retained control of the common hallways, no obligation rested upon him to clear away the debris and old furniture, followed by the instructions as to his obligations with respect to the ordinances and statutes relating to two separate and independent means of egress, gave the impression to the jury that defendant was not bound by the ordinances unless it found he had retained control of the common hallways; and (2) that the trial court erred in submitting the issue of plaintiffs' contributory negligence.

■ We do not feel that the instructions given could have misled the jury as to defendant's obligations under the ordinances and statutes. They were separated into two divisions. One related to the obligation of maintaining and keeping in repair the common hallways, and the other related to defendant's obligation under the ordinances and statutes. In its instructions as to the latter, the court repeatedly impressed upon the jury that such obligations rested upon *defendant* alone and left it to the jury to determine whether he had performed them, and, if not, whether he was excused therefrom because of the impracticability thereof as provided in the law. Thus, the court stated:

"* * * It is * * * for you to say whether there was a compliance or was not a compliance *by the landlord* with Section 225, or whether or not it was practicable for *him* to do so * * *.

"* * * when you are * * * trying to evaluate the evidence with reference to whether or not *the landlord* * * * complied with the ordinance with reference to the egress * * * you will take into consideration * * * the entire evidence * * *.

* * * * *

"Now if you find * * * that the *defendant* violated the statutes in question, then that would be * * * 'negligence per se.'" (Italics supplied.)

The court's admonition that the jury keep in mind "the law as I have

given it to you" was made long after its instructions as to the obligation under the oral lease and came immediately after the ordinances had been read and the general instructions above quoted as to defendant's obligation in connection therewith had been given. We fail to see how this admonition, coming at this stage of the instructions and with so many references to "defendant's obligation" in respect to the ordinances and statutes, could have confused the jury or given it the impression that it had any connection with the legal principles which the court had previously given with reference to the first claim of negligence.

■ Plaintiffs also contend that the court erred in refusing to instruct the jury that assumption of risk was *not* an issue in the case. They argue that the jury was led to believe that it was a material issue by the following instruction:

"* * * If * * * where there is no agreement to repair leased premises * * * by the landlord, and he is not guilty of any fraud or concealment as to their safe condition and the defects in the premises are not secret but obvious, the tenant takes the risk of their safe occupancy and the landlord is not liable to him for injuries sustained by reason of the unsafe condition of the premises."

And they also argue that it was error therefore to refuse to give a requested instruction to correct this impression.

Taken in context, it is clear that the above language referred only to the duty to keep the halls cleared insofar as this obligation related to the issue of contributory negligence, rather than to plaintiffs' assumption of any risks arising from the negligence, if any, of the landlord in maintaining the building in violation of municipal or statutory requirements. We do not think it can be said that by this instruction the concept of assumption of risk as a defense was brought into the case improperly so that error resulted from the court's refusal to grant the requested instruction in connection therewith.

■ Plaintiffs' next contention is that the court erred in submitting the issue of contributory negligence to the jury. Ordinarily contributory negligence constitutes a defense to actions based upon statutory violations, unless an express or implied legislative intent to the contrary

may be found. Dart v. Pure Oil Co. 223 Minn. 526, 27 N. W. (2d) 555, 171 A. L. R. 885; Prosser, *Contributory Negligence as Defense to Violation of Statute*, 32 Minn. L. Rev. 105. The evidence in the record is sufficient to warrant submission of the issue of contributory negligence of the tenants. It indicates that the halls were filled with debris and rubbish and that the fire burned most violently in the area of this refuse. Defendant testified that he told the Chapmans that, together with the other tenants, they were required to clean the halls. The plaintiff Oliver Isaacs testified that he knew that it was the obligation of the tenants to maintain the halls and stairways and that no such obligation rested upon defendant. There being evidence sufficient to support a finding that the tenants had a duty to maintain the halls safely and that they had failed to discharge this duty reasonably, it would follow that the trial court did not err in submitting to the jury the issue of their contributory negligence in this respect.

There is no evidence, however, that 6-year-old Barbara Chapman was guilty of contributory negligence. The trial court in instructing the jury on this issue did not distinguish between her and the remaining plaintiffs. The jury was told that, if it found that plaintiffs were guilty of contributory negligence, their verdict should be for the defendant. Obviously, this instruction was inclusive of and governed determination of Barbara's action. Her counsel excepted to this general instruction insofar as it applied to the "Chapmans" and in his motion for a new trial assigned as error the court's action in submitting the issue of contributory negligence to the jury. Likewise, in plaintiff's requested instruction her counsel urged that the jury be instructed that:

"* * * there is no evidence of contributory negligence on the part of plaintiffs James Chapman, Gale Chapman or Barbara Chapman which caused or contributed to cause the fire * * *."

While this request was properly denied as to James Chapman and Gale Chapman, it seems clear that it should have been granted as to Barbara. Bathke v. Krassin, 78 Minn. 272, 80 N. W. 950. We are of the opinion that the refusal of the trial court to instruct the jury that Barbara was free from negligence as a matter of law constituted a material error requiring a new trial in her action. Thomsen v. Reibel, 212 Minn. 83, 2 N. W. (2d) 567.

Affirmed as to James Chapman, Gale Chapman, and Oliver Isaacs and Hazel Isaacs; and reversed and new trial ordered as to Barbara Chapman, by James Chapman and Gale Chapman, her parents and natural guardians.