# LEW BURY AND ANOTHER v. CITY OF MINNEAPOLIS.

102 N. W. (2d) 706.

April 29, 1960—No. 37,714.

*Samuel Saliterman* and *Richard Hunegs,* for appellants.

*Charles A. Sawyer,* City Attorney, and *Raymond H. Hegna,* Assistant City Attorney, for respondent.

MURPHY, JUSTICE.

This is an appeal from the judgment and from an order denying a motion for a new trial in an action brought by the plaintiffs to recover for injuries sustained by Marie Bury in a fall at the intersection of a city-owned and -controlled alleyway and a sidewalk. It is contended that the court erred in directing a verdict for the defendant.

On the afternoon of November 21, 1956, Mrs. Bury was walking east on 25th Avenue North in a residential area of the city of Minneapolis. Between Lyndale Avenue and 6th Street the walk traverses a public alleyway. There is a grade down of about 6 degrees from the outer limits to the center of the alleyway. Mrs. Bury testified that as she walked down the incline from the west edge toward the middle of the alley her "feet seemed to slip from under" her. She testified that at the place where she fell there were "Not any deep ruts that I can recall. * * * when I got towards the center of the alley my feet flew from under me and down I slipped." The only evidence as to the existence of "ruts" came from a neighbor who said that at the time of the accident the alleyway "did have ice and snow and it had deep ruts in also." This witness, however, did not remember seeing ruts at that place prior to the time of the accident. There was no other evidence as to the existence of hummocks, ruts, or depressions caused by ice and snow at the place where the plaintiff fell. Another witness testified, "It was slippery on that drop-off from the sidewalk to the center of the alley." Three photographs were introduced in evidence which were identified as fairly representing the condition of the scene of the accident at the time it was alleged to have happened. These photographs corroborate the testimony of the witnesses that the sidewalks were comparatively free of snow and ice, as was the crosswalk except for certain patches of ice which would not interfere with safe travel.

From the evidence it appeared that there was a snowfall of about 5 inches on November 15, 1956, 6 days prior to the accident. In the intervening time there were 3 days in which slight precipitation occurred. The temperature varied causing the snow to alternately thaw and freeze. The temperature ranged from a maximum of 47 degrees on November 18 to a low of 13 degrees on November 21. The trial court was of the view that at best the evidence disclosed nothing more than a slippery condition caused by accumulated ice at various places in the crosswalk which did not constitute the existence of a dangerous condition and that in any event the municipality was without actual or constructive notice to allow for a reasonable opportunity to correct the condition prior to the accident.

The law pertaining to municipal liability for injuries caused by the negligent maintenance of public ways and sidewalks is well settled in this state. A municipal corporation owes a duty to the public to exercise reasonable care in the maintenance of sidewalks and other public ways in a safe condition for passage of pedestrians. Mathieson v. City of Duluth, 201 Minn. 290, 276 N. W. 222; cf. Peterson, *Governmental Responsibility for Torts in Minnesota,* 26 Minn. L. Rev. 480; 13 Dunnell, Dig. (3 ed.) §§ 6818, 6829. This duty extends to the elimination of dangerous conditions caused by accumulations of ice and snow. Mesberg v. City of Duluth, 191 Minn. 393, 254 N. W. 597; 21 Minn. L. Rev. 703; 13 Dunnell, Dig. (3 ed.) § 6829; see, Kelleher v. City of West St. Paul, 193 Minn. 487, 258 N. W. 834; Henkes v. City of Minneapolis, 42 Minn. 530, 44 N. W. 1026.

In both the Kelleher and Mesberg cases we recognized that the particular climate of this latitude has a bearing upon the degree of diligence a municipality is required to exercise with respect to conditions resulting from ice and snow. It was said in Wright v. City of St. Cloud, 54 Minn. 94, 97, 55 N. W. 819, 820:

"* * * What reasonable care might require in a milder climate * * * might be too high a standard in this climate, * * *."

The law is well settled that the existence of dangerous ridges, hummocks, and irregularities may give rise to actionable negligence against a municipality when injuries are occasioned by falls thereon. However, a municipality is not required to guard against mere slipperiness caused by a natural flow of water from melted ice and snow.[1]

Regardless of the nature of the accumulations of ice and snow, however, to assess liability against a municipality it must appear that it had actual or constructive notice that the accumulations complained of existed. Stanke v. City of St. Paul, 71 Minn. 51, 73 N. W. 629; Mesberg v. City of Duluth, 191 Minn. 393, 254 N. W. 597; 13 Dunnell, Dig. (3 ed.) § 6823; see, Fuller v. City of Mankato, 248 Minn. 342,

---

[1]Hall v. City of Anoka, 256 Minn. 134, 97 N. W. (2d) 380; Squillace v. Village of Mountain Iron, 223 Minn. 8, 26 N. W. (2d) 197; Kelleher v. City of West St. Paul, 193 Minn. 487, 258 N. W. 834.

80 N. W. (2d) 9. In the Mesberg case we said (191 Minn. 395, 254 N. W. 598):

"* * * It is settled law that before a municipality can be held liable for injury resulting from a defect in or obstruction on its streets or sidewalks it must have either actual or constructive notice of the existence of such defect or obstruction a sufficient time before the accident to allow a reasonable opportunity to remedy the condition."

It is not contended here that the city had actual notice of a dangerous condition. Since there is no evidence in the record that a "dangerous" condition existed before the day the accident occurred, it can hardly be said that the condition existed for a continuing period of time during which the municipality reasonably should have known of it.

We recognize that a motion for a directed verdict accepts the view of the entire evidence most favorable to the adverse party and admits, except in extreme cases, the credibility of the evidence in his favor and all reasonable inferences to be drawn therefrom; that it should be granted only in those unequivocal cases where "(1) *in the light of the evidence as a whole,* it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the *entire* evidence, or where (2) it would be contrary to the law applicable to the case." Hanson v. Homeland Ins. Co. 232 Minn. 403, 405, 45 N. W. (2d) 637, 638. Giving the plaintiffs the benefit of the foregoing rule as applied to the entire record before us, we must conclude that the evidence as to the existence of a dangerous condition at the time of the accident was at best tenuous and that there is no evidence whatever in the record to show that the municipality had actual or constructive notice of the existence of the dangerous condition which the plaintiffs claim existed.

Affirmed.

MR. JUSTICE LOEVINGER, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.