ELIZABETH DORGAN v. CITY OF ST. PAUL.[1]

November 23, 1917.

No. 20,481.

**Municipal corporation — trench in snow — negligence.**
    The digging of a trench from 6 to 10 feet long and 3 feet wide at the

[1]Reported in 165 N. W. 131.

top in snow and ice along the curb in a public street, in the spring of the year during the breaking up season, and leaving the same unguarded, does not, under the showing in this case, constitute actionable negligence.

Action in the district court for Ramsey county to recover $2,500 for injuries received while walking across a street in defendant city and $100 for medical expenses. The answer alleged negligence on the part of plaintiff. The case was tried before Dickson, J., who when plaintiff rested denied defendant's motion to dismiss and at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $250. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*O. H. O'Neill* and *John A. Burns,* for appellant.
*Stan J. Donnelly* and *Stan Dillon Donnelly,* for respondent.

QUINN, J.

Action to recover for personal injuries sustained by slipping and falling into a hole in the ice and snow upon a public street in the city of St. Paul. Plaintiff recovered a verdict. From an order denying its motion for judgment or for a new trial defendant appealed.

Carroll avenue and Louis street intersect at right angles, each having curbs and sidewalks on either side, but no cross-walks. There is a catch basin at the curb on the south side of Carroll avenue, at a point some 2 feet west of the sidewalk line on the west side of Louis street. The bottom of the opening into this catch basin is 11 inches below the top of the curb. Carroll avenue slopes for a considerable distance from the west and Louis street from the south toward the intersection, so that a freshet from rains or melted snow has free access to the catch basin unless impeded by some obstacle.

The snowfall had been heavy during the winter, and on March 1 the average accumulation of snow in the vicinity was over 11 inches, which melted away so that on March 18, the day of the accident, there was but about one inch left. During this time the temperature was varied, ranging from 7 degrees below to about 40 above zero, so much water and ice accumulated about the intersection referred to. Complaint

was made to the city street department, and, a few days prior to the accident, that department sent a crew out who cut a trench in the snow and ice along the curb from near the west sidewalk line some 8 or 10 feet west past the catch basin, so as to allow the water to enter the basin, but failed to open up the intake to the sewer so that water might enter the same. This trench was about 3 feet wide, the full depth of the snow and ice, and had filled with water. On the morning of the eighteenth the water was frozen over, so that in appearance it was much like the other portions of the surface of the street. Plaintiff was passing south on the walk on the west side of Louis street on her way home. In crossing Carroll avenue, making her way through the slushy snow, she met a little girl, and, stepping aside slightly to the west so as to avoid the child, her foot slipped and she was precipitated into the trench, thereby sustaining the injury complained of. The place was not guarded, nor had any signals been placed there to expose the situation.

The negligence charged against the defendant consisted of the act of its agents and servants in cutting the trench along the curb in such a way as to allow slushy snow to accumulate therein and conceal the excavation from view, and in failing and neglecting to guard or place signals so as to expose the situation, and it was upon this theory that the case was tried and submitted to the jury.

In presenting the case to this court, counsel for defendant contended that defendant was entitled to judgment. A new trial was not urged. The decisive question then is: Was there a showing made upon the trial that defendant, under the circumstances, was guilty of negligence in leaving the trench unguarded or without signals of some kind to warn the traveling public of the situation? The winter had been severe, the fall of snow heavy, and the breaking up season had arrived. The days were warm but the nights cold, and the accumulated snow and ice was fast melting away. The trench was from 6 to 10 feet long, about 3 feet wide at the top and constructed along the curb in the melting snow and ice. The water from melting snow accumulated in the trench. The east end of the trench was a few inches west of the line of travel across the street. The slushy snow had frozen over during the night, giving the place an appearance similar to the surrounding portions of the street.

Can it be said, speaking from experience, that the result in the instant case might reasonably have been foreseen or anticipated from the cutting of such a trench at that place and under those circumstances, and leaving it unguarded? We do not think so. It is a reasonable and common practice, during the breaking up of winter in a climate like ours, to cut such trenches in the streets for the purpose of getting rid of the water which accumulates from the melting snow. Nor is it deemed necessary, speaking generally, to guard them with danger signals. Such a requirement would place an impracticable and in many instances an almost unbearable burden upon the municipalities having the care of the public streets and ways. At this season of the year streets often, unavoidably, become almost impassable for a limited time on account of the melting snow.

We are of the opinion that it cannot be reasonably said that constructing the trench in question and leaving it unguarded was such negligence as to render the city liable. It follows that the defendant was entitled to a directed verdict.

Reversed with directions to the court below to award judgment in defendant's favor.