## MILDRED C. PISCOR v. VILLAGE OF HIBBING.[1]

January 14, 1927.

No. 25,600.

**When carbon duplicate of typewritten notice is admissible without proof of demand to produce the original.**

1. Where a carbon duplicate of a typewritten notice is signed at the same time as the original (the paper receiving the first impression) and the one who prepared the instruments testified that he presented the original to the village council in open meeting and retained the carbon duplicate, such duplicate is properly admissible in evidence without first showing a demand on the village to produce the original, the statute, G. S. 1923, § 1831, not requiring the notice to be filed or kept by the village recorder.

**Notice of injury sufficient to permit testimony concerning adjacent sidewalk.**

2. The notice was sufficient to permit testimony as to conditions immediately adjacent to the defect described.

**No error available to appellant.**

3. Where the court in excluding an exhibit intimates that it might later be offered and no subsequent offer is made, there is no reversible error.

**Plaintiff assumed the risk.**

4. The evidence fails to show actionable negligence of defendant and discloses plaintiff's contributory negligence in assuming an obvious risk.

Appeal and Error, 3 C. J. p. 749 n. 42.
Evidence, 22 C. J. p. 1061 n. 78.
Municipal Corporations, 28 Cyc. p. 1454 n. 52; p. 1505 n. 48; p. 1512 n. 78.

Defendant appealed from an order of the district court for St. Louis county, Freeman, J., denying its motion for judgment notwithstanding the verdict or for a new trial. Reversed with directions.

*C. G. Anderson* and *Lewis & Hunt*, for appellant.
*Power, Hario & Mulvahill*, for respondent.

[1]Reported in 211 N. W. 952.

HOLT, J.

Appeal by defendant from an order denying its motion in the alternative for judgment or a new trial.

Plaintiff sued for damages resulting from injuries received when she fell because of alleged defect in or adjacent to a sidewalk. The complaint described the defect as a hole immediately adjoining the sidewalk about five feet west of the intersection of the easterly sidewalk on St. Louis street with the northerly sidewalk on Josephine street in the village of Hibbing.

The evidence discloses that St. Louis street runs north and south and Josephine street east and west. There is no sidewalk on the south side of Josephine street, but on the north side there is a six-foot board sidewalk. The streets though graded with crowned driveways are unpaved and without curbs. The board sidewalks at the northeast corner of the intersecting streets mentioned extend some 8 or 10 feet beyond the point of intersection and over the boulevard to the vehicle traveled part of the street, where there are cross walks of planking laid lengthwise. The drainage of the surface waters is to the west; and along the boulevard on the north side of Josephine street is a ditch or gutter which opens into a 10-inch iron pipe or culvert, designed to receive and carry the water, collecting at the corner, under the crown of St. Louis street west. When this iron culvert or pipe is clogged by ice, the surface water flowing west on the northerly side of Josephine street and that coming from the north over the easterly side of St. Louis street collects at the corner the vehicle traveled part of the street, where there are crosswalks The ditch or gutter on the easterly side of St. Louis street runs under the board sidewalk extended beyond the westerly line of the easterly sidewalk, on St. Louis street, at a place about five feet west of said westerly line. The bottom of this ditch is some 10 inches below the surface of the walk. The ditch is about a foot wide. It is this ditch as it comes out from under the sidewalk that is designated as the hole or defect which caused the injury. The sidewalk was laid on stringers, four by four. The evidence is that these have sunk so that the ground is even with the surface of the sidewalk,

except where the ditch comes out and for a few inches on either side. This sidewalk also slopes somewhat towards the south or outer edge. There is evidence that four or five inches of the ends of the boards on the outer or southerly side of the sidewalk west of the ditch were bent down or broken off.

The accident occurred a little after noon on February 27, 1924. By weather records kept at Hibbing it was shown that there had been no precipitation for six days previously and that on the 27th and 26th it was clear and warm, the maximum temperature reaching 44 degrees. This resulted in the snow melting and forming slush, which at the time in question had collected in such quantities as to cover the sidewalk at the intersection mentioned and extended up over part of the crosswalk, so that some pedestrians left the crosswalk before reaching the sidewalk in crossing St. Louis street going east, and those going west would leave the sidewalk some distance before reaching the corner and turn south and walk along the crown of the driveway of the streets.

Plaintiff and Mrs. Hanson were walking east on the north side of Josephine street and were on the crosswalk on St. Louis street when Mrs. Hanson stopped and told plaintiff that she was not going to attempt to cross over where the sidewalk was, because she would get her feet wet, and started south to go around the place. Plaintiff's response was that she might as well get wet going forward as going any other way, and with that she went forward and stepped off or fell at or near the ditch. She is unable to tell whether she slipped into the ditch or stepped off. There is some evidence of the ends of the sidewalk being broken partly at the stringer so as to slant towards the ditch, but it is indefinite and does not show how far from the ends of the boards the stringer is. It is plain enough that when plaintiff attempted to cross there was a pool of slush at the corner which covered up the sidewalk there and encroached on the crosswalks to such an extent that a person was apt to get his feet wet even though wearing overshoes. It was apparent that no one could tell exactly where the sidewalk was. It is true that at some time a snowplow had run along the sidewalks; however it is

common knowledge that most snowplows do not mark out the edge or limits of a sidewalk, but deviate as obstructions impede on one side or the other. The testimony is undisputed that this accumulation of slush was on account of the thaw of February 26th and 27th. It was described by some as containing also chunks of ice floating around in it; by others as being slush of snow and water or jelly-like. At any rate, it was not clear water so that one could see down through to the sidewalk.

The first claim of appellant is that there was no valid proof of the service of the notice required by G. S. 1923, § 1831, or rather, proper foundation was not laid for the introduction of a copy of the notice served. The proof was ample that a notice of claim was presented to the village council at its session on March 26, 1924. Then plaintiff offered a carbon duplicate thereof, after the attorney who drew and presented the notice had testified that the exhibit offered was a carbon duplicate and that four or five such carbon duplicates were made and all were signed by plaintiff, so that they were all originals, the one receiving the impression of the typewriter directly as well as those receiving the same impression through the intervening carbon. We think there was adequate proof of service of the exhibit received in evidence. The statute does not provide for the filing or recording of the notice presented to the village, and no good reason is apparent why the one presenting the notice may not testify that a carbon duplicate was retained by him, and the same be admissible in evidence as proof of the presentation of notice without first calling on the village to produce the duplicate presented to it.

It is next urged that the notice served was not broad enough to permit evidence of the ends of the planks being broken or defective. True, the chief complaint was that the village permitted the sidewalk "in its sunken condition [to be] covered with water, ice, snow, rubbish and debris  *  *  *" and that plaintiff slipped into the "unguarded hole," the place of the hole being substantially identified with that of the gutter or ditch above mentioned. But there is some testimony, though indefinite and somewhat uncertain, that these

broken ends of the sidewalk boards were sufficiently near the ditch so as to form a part of it. Notices of this sort are not required to be as accurate as pleadings. They are sufficient if such attention be called to the defect that the village authorities are able to locate the place and examine the condition thereof so as to note whatever defects there may be. The gutter was pointed out as the hole or defect, and whatever of the adjacent conditions which contributed to make it more of a pitfall could well be noted in examining the hole itself. We think, within Anderson v. City of Minneapolis, 138 Minn. 350, 165 N. W. 134; Hampton v. City of Duluth, 140 Minn. 303, 168 N. W. 20; McClain v. City of Duluth, 163 Minn. 198, 203 N. W. 776, and the cases cited in those decisions, the notice was sufficient to receive evidence as to the condition of the boards in the immediate vicinity of the ditch or hole specified. Moreover the condition of the boards was apparently litigated by both sides, and, although defendant did at first object, no exception to any ruling upon that matter was noted at the trial, nor is any particular ruling pointed out in the motion for a new trial to which exception is taken.

There is no error available to appellant in the exclusion of the complaint in an action brought by plaintiff for injuries received in a previous accident, for the court when ruling on the offer intimated that defendant might thereafter renew it, but this was never done.

The main question in the case is raised by the motion for a directed verdict and for judgment notwithstanding. This includes whether there was actionable negligence on the part of the village and, if there was, whether as a matter of law plaintiff's contributory negligence or assumption of the risk did not appear. A village or city is not required to improve all its streets to the same extent. The locality in question did not constitute part of the main thoroughfares of the village. There was no sewer in the streets, no paving, no curbing and the sidewalk and crosswalk here were of wooden construction. No negligence can arise by reason of failure to provide better improvements. In the absence of sewer and connecting catch basins, it was necessary to lead the surface water to this

corner by ditches so that it might enter the iron culvert or pipe and be carried across beneath the crown of the street and pursue its course to the west. There is no evidence to show this construction to be negligent or improper. The fact that the pipe, because of thawing and freezing, may become clogged, shows neither negligence in the plan nor negligence in the care of the provisions made. In this climate there seems no way of preventing such clogging. Nor can it be negligence, but quite the reverse, to make openings under the sidewalks or crosswalks for the passage of surface water. These drains or ditches are such common and usual means of caring for these waters that we may take notice thereof, also of the fact that no municipality erects guards or barriers for the openings where these drains pass in and out under the walks. And it is idle to claim that actionable negligence can be predicated against a village or city on account of some sudden change in temperature in winter causing a thaw which overflows some street corner and covers the sidewalk with a pool of water or slush. In Dorgan v. City of St. Paul, 138 Minn. 347, 165 N. W. 131, we held that to actually dig a trench in the ice and snow that had accumulated from alternate freezings and thawings around a street corner did not constitute actionable negligence for which a pedestrian injured by a fall because thereof could recover damages. Nor is there any testimony as to the length of time that the ends of the sidewalk planks had been broken near the gutter. No actionable negligence could be based on that condition unless upon proof of its existence for such a long time that the village had constructive notice of the defect. There was none. Nor is it possible to predicate negligence of the city upon the failure of the snowplow accurately to mark the edge of the sidewalk. In our opinion the evidence is insufficient to establish negligence of the city as the cause of plaintiff's injury.

The foregoing conclusion leads to a reversal, without considering whether it appears as a matter of law that plaintiff's own lack of care caused her injury. But we think the evidence shows that she alone is to blame for her fall. She was well acquainted with the location. It was broad daylight. She saw the crossing at the

corner so covered with slush and water that it was impossible to tell where the sidewalk was located. She was warned by her companion, who refused to cross with her. In attempting notwithstanding to wade through this pool of slush, she assumed the risk of stepping or slipping off the sidewalk. She could have gone around the overflowed corner just as well as her companion and others were then doing. The situation and risks were as obvious to her as to the one injured in Wright v. City of St. Cloud, 54 Minn. 94, 55 N. W. 819. Sudden heavy rains in summer or thaws in winter invariably cause pools to collect in some corners of street crossings, and it is unreasonable to demand that the municipality insure against injury those who attempt to walk through, especially when as here there was in plain view a perfectly safe way around which others were using.

Defendant was entitled to a directed verdict. The order is reversed and cause remanded with direction to enter judgment for defendant notwithstanding the verdict.

DIBELL, J. (dissenting.)

In my view of the evidence the questions of negligence and contributory negligence were for the jury and therefore I dissent.

WILSON, C. J. (dissenting.)

I concur in the views of Mr. Justice Dibell.