## NANCY LOUISE STEPHENSON, A MINOR, BY DOROTHY M. STEPHENSON, HER GUARDIAN AD LITEM, v. F. W. WOOLWORTH COMPANY.

152 N. W. (2d) 138.

July 7, 1967—No. 39,984.

*Winter, Lundquist & Sherwood,* for appellant.
*Olson & Kief* and *Paul A. Kief,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order denying defendant's motion for judgment notwithstanding the verdict or in the alternative for a new trial.

The action arises out of an injury sustained by plaintiff when she slipped and fell on the floor of defendant's store in Bemidji, Minnesota.

The front of defendant's store faces to the east and has two entrances, one on the southeast corner and another on the northeast corner. Near the entrances, inside the store, there are checkout counters. Between the checkout counters and the east wall there is an aisle running the full length of the store.

On December 21, 1961, plaintiff entered the northeast entrance of the store and stepped onto a rubber and steel floor mat inside the door. She observed a puddle of water on the floor, located immediately west of the mat, which the jury could find was approximately 2 inches deep, 3 to 4 feet long, and the width of the aisle that she entered. The weather had been inclement and people were dragging snow into the store on their feet. As plaintiff stepped into the puddle she slipped and fell forward onto her hands and knees and experienced pain in both knees. She was treated

by a doctor and remained inactive for about two weeks. She then returned to school with the aid of crutches and taxicab transportation.

On February 13, 1962, the doctor who attended plaintiff found her knees to be healed. She testified that she experienced weakness in both knees after that date and until May 27, 1962. On the latter date she and her sister were hitting a shuttlecock back and forth outdoors when she took a step backward and her legs collapsed. As a result of this fall plaintiff underwent an operation on June 8, 1962, for removal of cartilage in her left knee.

The jury returned a verdict of $13,000. The questions presented on appeal are: (1) Was plaintiff guilty of assumption of risk as a matter of law? (2) Did the court err in refusing to submit assumption of risk to the jury? (3) Is the verdict excessive?

■ It seems useless to continue to review our cases dealing with assumption of risk. We recently attempted to define the prerequisites to application of this defense in Knutson v. Arrigoni Brothers Co. 275 Minn. 408, 147 N. W. (2d) 561. We there said that essential to the application of the doctrine are knowledge of the danger and an intelligent acquiescence in it or a willingness to encounter the danger in spite of such knowledge.

It is doubtful whether the rules we follow can be stated better than they are in Minnesota Jury Instruction Guides. Instruction 135 reads:

"Assumption of risk is voluntarily placing (oneself) (one's property) in a position to chance known hazards. To find that a person assumed the risk you must find:

"1. That he had knowledge of the risk.

"2. That he appreciated the risk.

"3. That he had a choice to avoid the risk or chance it and voluntarily chose to chance it.

"[If a person has assumed the risk he cannot recover for any injury or damage sustained by him]."[1]

Instruction 136 reads:

---

[1] As authority for these rules we find the following under this instruction: "The doctrine of assumption of risk is predicated upon a knowledge and appreciation of the risk involved and a voluntary choosing to incur the risk. The defendant must show that the plaintiff had knowledge of the risk, Guile v.

"Assumption of risk should be distinguished from contributory negligence. Assumption of risk does not involve a failure to use reasonable care. A person who assumes the risk is one who voluntarily chooses to chance a danger which is known and appreciated. Contributory negligence does involve a failure to use reasonable care. A person who is contributorily negligent is one who has failed to use that care which a reasonable person would use under like circumstances." [2]

---

Greenberg, 192 Minn. 548, 257 N. W. 649 (1934), appreciated it, Mayzlik v. Lansing Elevator Co., 241 Minn. 468, 63 N. W. 2d 380 (1954); Lincoln v. Cambridge-Radisson Co., 235 Minn. 20, 49 N. W. 2d 1 (1951), and, having opportunity either to incur it or avoid it, voluntarily chose to incur it. Zuber v. Northern Pac. Ry. Co., 246 Minn. 157, 74 N. W. 2d 641 (1956); Guile v. Greenberg, supra. Volition to incur the risk requires that a free choice be available. If there is no available choice whereby the risk may be avoided, assumption of risk is not the proper defense. Donald v. Moses, 254 Minn. 186, 94 N. W. 2d 255 (1959).

"Ordinarily the question of assumption of risk is for the jury. Logan v. Hennepin Ave. Methodist-Episcopal Church, 210 Minn. 96, 297 N. W. 333 (1941). See Aldes v. St. Paul Ball Club, Inc., 251 Minn. 440, 88 N. W. 2d 94 (1958); Anderson v. Hegna, 212 Minn. 147, 2 N. W. 2d 820 (1942).

"On the distinction between contributory negligence and assumption of risk, see generally Authorities, JIG 136."

[2] As authority for this rule we find the following: "Assumption of risk and contributory negligence are separate and distinct defenses and must be so treated in the instructions. Donald v. Moses, 254 Minn. 186, 94 N. W. 2d 255 (1959). Assumption of risk involves knowledge and appreciation of the risk and a voluntary choice to incur the risk. Negligence in deciding to incur the risk is not involved. Nor is negligence in the performance of the assumed risk involved. A person may exercise extreme care in performing a hazardous act and be held to have assumed the risk although he is not contributorily negligent. On the other hand, a person may not have assumed the risk because his choice was not voluntary due to the absence of alternative routes, but he may still be charged with contributory negligence on the grounds that the risk was so great that a reasonable person under the circumstances would not have undertaken the risk. Similarly, a person may be negligent in the manner in which a risk is undertaken or performed and be charged with contributory negligence, even though the person did not have either volition or appreciation of the risk. See Donald v. Moses, supra; Mayzlik v. Lansing Elevator Co., 241 Minn. 468, 63 N. W. 2d 380 (1954); Schrader v. Kriesel, 232 Minn. 238,

In applying our decisions (which are not always easy to reconcile) to the facts of this case, about all that can be said is that if there is a safe alternative route and a party chooses the dangerous one, realizing the danger of so doing, or the danger is so evident that he is chargeable with knowledge thereof, the doctrine may apply as a matter of law.

Ordinarily it is a question for the jury whether a party exercised the judgment of an ordinarily prudent person in proceeding as he did, especially if there is an alternative, less dangerous, route which he could have taken. That is the situation here. Not only was there admitted knowledge of danger, but there was at least a jury question as to whether plaintiff could have chosen a safer route. The jury could find that she could have turned left and followed an aisle in the front of the store, even if she was not required to inspect the other entrance. The evidence is not so conclusive as to require application of assumption of risk as a matter of law, but it does present a jury issue. We are convinced, however, that even if it had been submitted the result would have been the same. The jury was adequately instructed on contributory negligence. This is one of those cases where assumption of risk as a jury issue becomes largely a question of whether she had a safer alternative route and in spite of it chose the more dangerous route with knowledge of the hazard involved in doing so. In view of the discussion to follow, we conclude that some other disposition of the case may arrive at a fair result without a new trial.

■ Plaintiff sued to recover $9,900. The jury returned a verdict for $13,000. Defendant now contends that if it is not to have a new trial, plaintiff should at least be limited to recovery of the amount prayed for in her complaint. No attempt was made to amend the complaint during the trial. Plaintiff moved to amend the complaint after the verdict but this motion was denied. Defendant's motion to reduce the verdict to the amount prayed for in the complaint was also denied.

Under our liberalized rules of pleading, ordinarily plaintiff is not limited to the recovery of the amount prayed for in the complaint. However, this rule ought to be cautiously applied where plaintiff sues for an amount less than he hopes to recover in order to deprive defendant of a right he

45 N. W. 2d 395 (1950); Piscor v. Village of Hibbing, 169 Minn. 478, 211 N. W. 952 (1927)."

would otherwise have. Defendant contends that by suing for $9,900 plaintiff prevented removal of the case to the Federal court on the grounds of diversity of citizenship. Where a claim is unliquidated a plaintiff may prevent removal to the Federal court by suing for an amount less than the jurisdictional amount. Brady v. Indemnity Ins. Co. (6 Cir.) 68 F. (2d) 302.

■ The jurisdictional amount for removal is that which is claimed in the complaint. Bonnell v. Seaboard Air Line R. Co. (N. D. Fla.) 202 F. Supp. 53; Gaitor v. Peninsular & Occidental SS. Co. (5 Cir.) 287 F. (2d) 252.

■ Under 28 USCA, § 1446(b), a case which is not removable when commenced may become removable later by amendment of the pleadings. This section reads in part:

"If the case stated by the initial pleading is not removable, a petition for removal may be filed within twenty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." [3]

■ Unless a defendant moves within the time limited by the Federal statute after the case becomes removable he waives the right to object after trial of the case. G. N. Ry. Co. v. Alexander, 246 U. S. 276, 38 S. Ct. 237, 62 L. ed. 713. See, 45 Am. Jur., Removal of Causes, §§ 30, 127; 76 C. J. S., Removal of Causes, § 28; N. P. Ry. Co. v. Austin, 34 Minn. 473, 26 N. W. 607, affirmed, 135 U. S. 315, 10 S. Ct. 758, 34 L. ed. 218.

It therefore seems that the rule is that a defendant cannot be deprived of the right of removal, if he takes action within the time limited by the statute, by the simple expedient of commencing an action for less than the jurisdictional amount and thereafter increasing it by amendment during the trial. In Ft. Smith & W. R. Co. v. Blevins, 35 Okla. 378, 130 P. 525, the court said:

"Where plaintiff amends his petition, increasing the amount sued for so as to constitute a removable cause to the proper federal court, the right

---

[3] For construction of this statute, see Gaitor v. Peninsular & Occidental SS. Co. (5 Cir.) 287 F. (2d) 252, 255.

to remove is thereby given, and, if the defendant by proper application in due time avails itself of that right, it cannot be denied."

The difficulty here is that no motion to amend the complaint was made until after the verdict. Defendant had no opportunity to take action for removal of the case to Federal court until that time. It seems that if action is to be taken to enlarge the ad damnum clause of the complaint to such amount as to make it removable, it ought to be done at the pleading stage rather than during trial. Where a plaintiff chooses to sue for less than the jurisdictional amount for removal he ought to be bound by that amount unless he moves to amend prior to the commencement of the trial [4] or at least within such time as will enable the defendant to assert its right of removal.

This issue becomes even more important in the realm of personal injury cases where the defendant has a limited insurance coverage. If the plaintiff sues for the amount of insurance coverage, the insured can be lulled into a false sense of security in believing he cannot be held for any excess above the amount of coverage. If there is a possibility of recovery for more than the insurance, the insured has the absolute right to have his own counsel represent him, to protect his rights as to such excess liability. If recovery is limited to the amount of the insurance, he is not interested in this aspect of the case. In such case, if the plaintiff chooses to sue for the amount of insurance coverage he should be bound by such choice.[5] To so hold is to apply a rule analogous to that applicable to default judgments, where the party sued is entitled to rely on the fact that judgment may not be taken against him for more than the amount prayed for.

Rule 54.03, Rules of Civil Procedure, reads:

"A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every other judgment shall grant the relief to which the party in whose favor it is rendered is entitled."

---

[4] See, 15 U. of Miami L. Rev. 415.

[5] See, Phillips v. Rolston, 376 Mich. 264, 137 N. W. (2d) 158.

This rule superseded Minn. St. 1949, § 548.01. It has been held in numerous cases that in default actions the defendant has the right to rely upon the prayer for relief, and judgment cannot be taken against him in excess of the prayer for relief.[6]

While ordinarily the court may grant full relief in other cases even if it goes beyond the prayer for relief, the rule contemplates that the judgment shall grant only the relief to which the party in whose favor it is rendered claims he is entitled. We think the holding here is consistent with the intent of this rule, in that where a plaintiff sues to recover for a specific amount for the purpose of depriving his opponent of a right which he would otherwise have, he is not entitled to recover more than the amount prayed for in his complaint.

■ We therefore hold that where a party chooses to sue for an amount that will or may deprive another party of a right he may have, the plaintiff is bound by such choice unless he takes action to amend his complaint within such time as will enable the defendant to assert the right which he has.

In such case, at the request of the party who may be prejudiced thereby, the court should instruct the jury that they may not return a verdict for more than the amount sued for. In the absence of such request the trial court should reduce the recovery, if greater than that sued for, to the amount demanded in the ad damnum clause of the complaint.

Plaintiff here claims that even if that be true the issue in this case was litigated by consent. There is merit in this contention. The amount plaintiff was entitled to recover was not raised by defendant until its motion for new trial. However, as a matter of trial strategy a defendant may not desire to have a court instruct the jury that it may not return a verdict for more than that demanded in the ad damnum clause, for fear that the jury will take such instructions as an indication that the court believes it should return a verdict for the maximum allowable amount. It is better to permit a defendant to decide whether he wishes such instruction. The court can

---

[6] Sache v. Wallace, 101 Minn. 169, 112 N. W. 386, 11 L.R.A. (N.S.) 803, 118 A. S. R. 612, 11 Ann. Cas. 348; Duenow v. Lindeman, 223 Minn. 505, 27 N. W. (2d) 421; Dockendorf v. Lakie, 240 Minn. 441, 61 N. W. (2d) 752.

always correct it if the jury exceeds the permissible limit. The trial court may then determine if defendant has been prejudiced.

■ Defendant contends that the verdict is excessive, insisting that there is no causal relationship between the injuries sustained in the second fall and those sustained in the first fall, for which defendant was held liable.

Ordinarily, the right to recover for a second injury following an original injury sustained as a result of a defendant's negligence depends on causal relationship between the two. The question is whether the second injury is a proximate consequence of the first injury.[7] Where weakness arising as a result of the injury in the ordinary course of affairs leads to the second injury, the jury may infer a causal relationship. In Sporna v. Kalina, 184 Minn. 89, 237 N. W. 841, 76 A. L. R. 1280, we held there was no causal relationship. In that case Sporna was injured by an automobile driven by defendant. Both legs were fractured. Seven months later Sporna, who walked "wobbly," slowly, and carefully, with the aid of a cane, attempted to negotiate the steps of the basement in his home. When he reached midway of the stairs his legs seemed to give way, causing him to fall to the basement floor. He received a skull fracture from which he died shortly afterward. We held that while walking was a natural thing to do, there was no necessity for the decedent, knowing the weakness of his legs, to attempt to traverse a steep stairway.

Applying that rule to the facts of this case, the question would be whether plaintiff, knowing of the weakness in her knees, was doing something so extraordinary by playing badminton that her fall could not be held to be a proximate consequence of the original injury. Badminton ordinarily is not a strenuous game, or at least the jury could find that plaintiff was merely hitting a shuttlecock around and moving about very little. We think this question was for the jury and was properly submitted to it by the trial court.

In view of the fact that it was a technical error not to submit the issue of assumption of risk to the jury, we believe the proper disposition of this case is to order a remittitur or a new trial at the option of plaintiff.

It is therefore ordered that unless plaintiff within 10 days after the filing of this decision consents to a remittitur to the sum of $9,900, defendant

---

[7] See, Annotation, 76 A. L. R. 1285.

shall have a new trial. In the event plaintiff consents to such remittitur, no disbursements will be allowed to defendant for printing the record.