**Gertrude O. OLSON, Appellant,**

v.

**CITY OF ST. JAMES, Daniel J. Birkholz, et al., Respondents.**

No. CX–85–1031.

Court of Appeals of Minnesota.

Jan. 21, 1986.

James H. Manahan, Mankato, for appellant.

Gary W. Koch, New Ulm, for City of St. James.

Gary G. Wollschlager, Fairmont, for Daniel J. Birkholz, et al.

Heard, considered and decided by POPO-VICH, C.J., and RANDALL and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Appellant slipped and fell on an ice-covered public walkway, injuring her shoulder. She sued both the municipality and the abutting landowners. Following the presentation of evidence, the trial court granted a directed verdict in favor of all respondents, saying that as a matter of law appellant's negligence exceeded any negligence of respondents. The trial court also denied appellant's motion for a new trial. She appeals from both the judgment and the order denying the new trial. We affirm in part, reverse in part, and remand.

## FACTS

Appellant Gertrude Olson was 81 years old at the time of her injury. She worked full time as a receptionist and secretary for an insurance agency in St. James. She lived a few blocks from the agency and walked to and from work every day. She

also usually walked home for lunch each day. Before her fall, she was in good health.

Appellant's fall occurred on a public sidewalk where it crosses a north-south driveway located between two business sites, Sam's Electric on the east side and respondents Birkholz and DeHenzel's real estate business on the west side. Birkholz and DeHenzel own part of the parking lot behind the buildings and all of the driveway that connects the parking lot to the street. The walk is subject to municipal authority of respondent City of St. James. Water from melting snow and ice drains from this entire adjoining area behind the buildings down the driveway, across the walkway, and into the street in front of the buildings.

Appellant was injured on January 11, 1984. In the preceding days there had been very little snowfall. The last measurable snowfall was on December 21, when two inches fell. A trace of snow fell on January 3 and on January 11. It was not snowing at the time appellant fell, about 1:00 p.m.

On January 1, there were 26 inches of snow on the ground. However, the temperature exceeded 32 degrees on January 3 through January 8, and much of the snow melted. Between January 1 and January 11, the date of appellant's injury, 16 inches of snow melted. On January 9, 10, and 11, the temperature stayed below 32 degrees.

The warm days and melting snow caused water to drain across the driveway and walkway between Sam's and Birkholz and DeHenzel's buildings. At night the water froze, leaving the area covered with ice. There is no dispute that the driveway was frequently ice-covered. Respondent Dan Birkholz testified that the water running off and then freezing was an "ongoing problem." He stated that it was impossible to keep the driveway clear because each warm day and freezing night would once again result in ice covering the driveway. He also testified that he hired a snow removal company to plow the parking lot and driveway and hired an individual to keep the sidewalks clear. He submitted a bill from the snow removal company showing that they had done some work on January 7 and a bill from the other individual for 11 hours of work in January. He said he also chipped the ice down himself a few times and put salt on it "whenever necessary." He testified that the problem was aggravated by snow and ice that fell from cars onto the driveway as they entered or left the parking lot.

Several witnesses added to the testimony about the driveway's condition and their own difficulties in walking across it. They reported that the walk was icy on January 10 and 11.

The owner of Sam's Electric, Noel Clipperton, testified that he had observed ice on the driveway, but that sometimes it was cleared off. He had once seen someone slip and fall while attempting to cross the driveway. Clipperton said that the water draining from his building flowed directly onto the sidewalk and not onto the driveway; respondent Robert DeHenzel testified that the water from Sam's drains directly onto the eastern portion of the driveway, as well as onto the sidewalk in front of Sam's.

Appellant testified that she usually detoured from the place where she eventually fell, walking out into the street before reaching the icy spot and returning to the sidewalk after she passed the area. On January 11, appellant crossed the place of her fall two times, once in the morning on her way to work and once on her way home for lunch. Both of those times she walked into the street until she was past the driveway. She testified that she could get past on the sidewalk, but the entrance to the driveway "was solid ice all the time." Because of the light snow cover, however, she did not realize that she had reached the driveway as she approached it for the third time that day. When she did realize it, she turned to go out into the street, but slipped and fell.

Appellant sued the city, alleging negligence in failing to safely maintain the public walkway. She also sued Birkholz and DeHenzel, alleging negligence in creating

artificial conditions that resulted in an accumulation of ice on the driveway.

At the close of all the evidence, the trial court granted a directed verdict in favor of both respondents. The court found that

1) as a matter of law appellant's negligence exceeded the negligence of any of the respondents;

2) there was no evidence of any accumulated snow;

3) there was no description as to the icy area where appellant was alleged to have fallen, so that the court was left to assume that the ice that she fell on accumulated through the melting and freezing process;

4) there was no artificial accumulation of ice, thus relieving respondents Birkholz and DeHenzel of any liability; and

5) respondent city had no notice of the hazardous condition.

## ISSUES

1. Did the trial court err in finding that appellant's negligence exceeded the negligence of any respondent as a matter of law?

2. Did the trial court err in taking from the jury the question of whether the city had constructive notice of the hazardous condition?

3. Did the trial court err in directing a verdict for respondents Birkholz and De-Henzel?

## ANALYSIS

■ 1. A motion for directed verdict presents a question of law regarding the sufficiency of the evidence to sustain a verdict for the opponent. *See* Minn.R. Civ.P. 50.01. The motion accepts the view of the evidence most favorable to the adverse party, admits its credibility, and draws all reasonable inferences from the evidence in favor of that party. Directed verdicts should be granted only in those unequivocal cases where (1) in the light of the evidence as a whole, it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly

against the entire evidence, or where (2) it would be contrary to the law applicable to the case. *Scott v. Village of Olivia,* 260 Minn. 346, 350, 110 N.W.2d 21, 25 (1961).

The trial court found appellant conclusively negligent because of the evidence indicating that she was well aware of the hazardous condition of the driveway and that she usually avoided the sidewalk because she thought it was dangerous. The trial court pointed out that appellant had already passed by the hazard two times on the same day that she fell, but that she simply misjudged where the ice was as she walked towards the driveway for the third time that day.

A preliminary review reveals slip and fall cases where plaintiffs have been held conclusively negligent. *See Piscor v. Village of Hibbing,* 169 Minn. 478, 483, 211 N.W. 952, 954 (1927); *Friday v. City of Moorhead,* 84 Minn. 273, 275–76, 87 N.W. 780, 780–81 (1901); *Wright v. City of St. Cloud,* 54 Minn. 94, 98–99, 55 N.W. 818, 820–21 (1893). In *Piscor* the court stated in dicta that where the plaintiff was well acquainted with the location, came upon it in broad daylight, was warned by her companion not to attempt to cross the hazard, and had a safe alternative route available to her, she could not recover against the city when she crossed the hazard and fell. *Piscor,* 169 Minn. at 483–84, 211 N.W. at 954. In *Friday,* the court held that where the plaintiff had

> full and present knowledge of the condition of the street, he must be deemed, as a matter of law, to have assumed the risks incident to passing over it. It is not a case of coming suddenly upon an unknown defect, or upon a known defect, but without present knowledge of it.

*Friday,* 84 Minn. at 275, 87 N.W. at 780. The court said, however:

> Of course, the special facts of a particular case might furnish a reasonable justification for an attempt to pass over a defective street with present knowledge of the defects; and the mere passing over such a street with such knowledge is not necessarily conclusive evidence of

contributory negligence, or assumption of risk, which is the same thing.

*Id.* at 275–76, 87 N.W. at 780.

Respondent city argues that appellant must be held conclusively negligent under *Piscor* and *Friday.* We reach a contrary conclusion for the following reasons:

■ First, she did not have "present knowledge" of the defect, even though it was a defect known to her. *See id.* 84 Minn. at 275, 87 N.W. at 780. The mere fact that she had previous knowledge does not mean she was negligent as a matter of law. She must have had presently in mind the existence of the defect or the consequent risk. *See Wright,* 54 Minn. at 98, 55 N.W. at 820. This principle was followed in *Nelson v. Garden Valley Telephone Co.,* 201 Minn. 198, 275 N.W. 612 (1937):

> [A] person walking on a sidewalk which he knows to be defective is not negligent as a matter of law because of nonobservance of the defect at the moment he stepped into it. *McGandy v. City of Marshall,* 178 Minn. 326, 227 N.W. 177 (1929). It seems to us that it was a question for the jury * * *.

*Nelson,* 201 Minn. at 202, 275 N.W. at 614. *See also Bowen v. City of St. Paul,* 152 Minn. 123, 125, 188 N.W. 554, 555 (1922) (even previous knowledge of a particular defect is not conclusive of contributory negligence).

These cases deal with appellant's situation here. As the trial court noted, although appellant was aware of the hazard, she did not realize that she had reached the dangerous spot until she stepped upon it and turned to avoid it.

Second, when early cases on this issue were decided, Minnesota applied the contributory negligence doctrine, which has much harsher effects on a plaintiff than the presently applied doctrine of comparative negligence. Three more recent cases, each applying comparative negligence law, prevent a finding that appellant was negligent as a matter of law. *See Peterson v. Haule,* 304 Minn. 160, 169, 230 N.W.2d 51, 57 (1975); *Stapleman v. St. Joseph the Worker,* 295 Minn. 406, 409–10, 205 N.W.2d 677, 679 (1973); *Munoz v. Applebaum's Food Market, Inc.,* 293 Minn. 433, 434, 196 N.W.2d 921, 922 (1972). *See also Springrose v. Willmore,* 292 Minn. 23, 24–25, 192 N.W.2d 826, 827 (1971) (unreasonable assumption of risk no longer bars recovery by a plaintiff, but may be considered as part of her contributory negligence).

The rule first enunciated in *Munoz* and followed in *Stapleman* and *Peterson* is that the test of a plaintiff's right to recover is whether the danger was in fact "visible." *Munoz,* 293 Minn. at 434, 196 N.W.2d at 922; *Stapleman,* 295 Minn. at 410, 205 N.W.2d at 679. This reaffirms the holding in *Friday* that when the danger is "apparent" recovery is precluded. *Friday,* 84 Minn. at 275, 87 N.W. at 780. However, in applying the rule, the court in *Peterson* discussed whether a plaintiff can be held negligent as a matter of law when the danger was visible:

> In a comparative negligence state, the inappropriateness of holding, as a matter of law, that plaintiff's negligence must exceed that of defendant's, is obvious.

*Peterson,* 304 Minn. at 169, 230 N.W.2d at 57. In the circumstances here, where appellant was not immediately aware of her hazard, and having regard for rules of law on directed verdicts and present law on comparative negligence, the trial court erred in not submitting the question of appellant's negligence to the jury.

■ 2. Although a municipality owes a duty to the public to exercise reasonable care in maintaining sidewalks and other public ways in a safe condition for passage of pedestrians, liability will not be assessed without proof that the municipality had actual or constructive notice of the dangerous condition. *Smith v. Village of Hibbing,* 272 Minn. 1, 3, 136 N.W.2d 609, 610 (1965).

■ Further, a municipality is not required to guard against mere slipperiness caused by natural flows of water from melted ice and snow. *Smith,* 272 Minn. at 3, 136 N.W.2d at 610. It follows, therefore, that the notice must be of hazards

due to slippery ice made more dangerous by reason of dangerous ridges or irregularities.

■ Appellant does not claim that the city had actual notice of the hazard. However, she and other witnesses testified without contradiction that the condition was an ongoing problem, such that the city may have had constructive notice of the slippery walk. In several cases, the supreme court has affirmed holdings that a municipality had constructive notice of snowy and icy conditions that existed for a much shorter time than that involved here. *See, e.g., Mathieson v. City of Duluth,* 201 Minn. 290, 292, 276 N.W. 222, 223 (1937) (finding of constructive notice sustained when condition existed for one to two weeks); *Woodring v. City of Duluth,* 224 Minn. 580, 583, 29 N.W.2d 484, 486 (1947) (evidence sufficient to sustain jury finding that dangerous condition had existed continuously for 10 days to two weeks); *Scott,* 260 Minn. at 352, 110 N.W.2d at 26 (directed verdict for defendant inappropriate where evidence was that the condition recurred at the same place winter after winter for 13 years, requiring submission of the issue of constructive notice to jury). As in *Scott,* it was error for the trial judge to decide the question of whether the conditions here were sufficient to put the city on notice. That question is for the jury.

■ 3. Abutting property owners are liable for a sidewalk hazard only when it is caused at least partially by conditions they have created. *Graalum v. Radisson Ramp Inc.,* 245 Minn. 54, 60, 71 N.W.2d 904, 908 (1955). The owner's liability does not extend to conditions formed by normal vehicular traffic. *McDonough v. City of St. Paul,* 179 Minn. 553, 556, 230 N.W. 89, 90 (1930).

There is no evidence here that respondents Birkholz and DeHenzel created the slippery conditions near their building. A drain from their building could direct water toward the hazardous area, but there is no evidence that any such flow of water contributed to the hazard which caused appellant's fall.

At the close of the evidence at trial, the court in chambers discussed with counsel the motions for directed verdict. Regarding the motion for the private property owners, appellant's counsel stated:

Basically, Your Honor, I don't oppose that motion. The law, as I understand it, is that the owner of property has no duty to maintain an adjoining public sidewalk and they are only liable if they artifically caused dangerous ice to form on the sidewalk. I think that's the law. I think that's the primary obligation of the City and that's my primary defendant here. So I'll take no position on [Birkholz and DeHenzel's] motion.

■ Counsel and the trial court correctly assessed the exposure of Birkholz and DeHenzel to liability in this case. The trial court acted properly in directing a verdict for these parties.

## DECISION

Because fact questions remain that must be submitted to the jury, the trial court erred in granting a directed verdict in favor of respondent City of St. James. The trial court did not err in granting the motion in favor of Birkholz and DeHenzel.

Affirmed in part, reversed in part, and remanded.