**Marilyn DOYLE, Respondent,**

v.

**CITY OF ROSEVILLE, petitioner,
Appellant.**

No. C7–93–710.

Supreme Court of Minnesota.

Nov. 18, 1994.

Rehearing Denied Dec. 15, 1994.

Patricia Y. Beety, Carla J. Heyl, St. Paul,
and Clifford M. Greene, Minneapolis, for ap-
pellant.

Colia F. Ceisel, St. Paul, for respondent.

Richard L. Jasperson, St. Paul, for interve-
nor.

## OPINION

COYNE, Justice.

We review a decision of the court of appeals reversing summary judgment in favor of the City of Roseville in this action for damages arising out of a slip-and-fall accident in an icy parking lot serving the municipal ice arena. We reverse and reinstate the judgment entered in the district court.

On February 2, 1991 Marilyn Doyle attended a high school hockey game at the Roseville Ice Arena. With other parents of senior cheerleaders Ms. Doyle was to be honored at a between-periods ceremony. Because the ceremony was to be held out on the ice rink, she wore rubber-soled, flat-heeled shoes. The temperature on that day had reached about 45 degrees, and when Ms. Doyle arrived at the arena around 7 p.m., water from melted snow was running across the parking lot. She saw no ice, only water.

When Ms. Doyle left the ice arena 3 hours later at about 10 p.m. it was considerably colder than when she had entered the arena and the ground was slippery. Ms. Doyle has lived in Minnesota for more than 30 years, and she concedes knowing that ice forms when the temperature drops below 32 degrees. Because it was slippery she walked carefully across the parking lot and down an aisle toward her car. As she neared her car Ms. Doyle slipped on a "[v]ery thin layer of glare ice." Ms. Doyle described the ice as smooth—not ridged. In falling Ms. Doyle broke her right leg and could not arise. A friend who heard Ms. Doyle's call for help stated that because it was dark at that end of the parking lot she had trouble locating Ms. Doyle who was wearing a black jacket.

Doyle sued the City alleging negligent failure to remove or treat ice after actual or constructive knowledge of a dangerous condition; inadequate lighting; failure to warn of a dangerous condition—unremoved or untreated ice and inadequate lighting; and negligent supervision, inspection and maintenance of the premises. The City moved for summary judgment on four grounds:

1. Immunity pursuant to Minn.Stat. § 466.03, subd. 6e (1992);

2. Discretionary immunity pursuant to Minn.Stat. § 466.03, subd. 6 (1992);

3. That there was no evidence that the City had been negligent; and

4. That the plaintiff had been more negligent than the City.

The district court granted summary judgment based on the first ground asserted by the City: that the City was immune from liability pursuant to Minn.Stat. § 466.03, subd. 6e (1992), which insulates a municipality from liability with respect to parks and recreation areas. Although the City did not assert immunity with respect to accumulations of snow and ice, the district court ruled that the City was also immune from liability pursuant to Minn.Stat. § 466.03, subd. 4 (1992).

Relying primarily on *Bufkin v. City of Duluth*, 291 N.W.2d 225 (Minn.1980), the court of appeals reversed the district court and remanded for trial, holding that the City was not immune from liability pursuant to Minn.Stat. § 466.03, subdivision 4 or subdivision 6e or subdivision 6 (discretionary immunity) 507 N.W.2d 33.

Long before this court withdrew its recognition of the judicially created defense of sovereign immunity with respect to various governmental units, including municipalities, the common law imposed upon those same municipalities the duty to exercise reasonable care to maintain their streets and sidewalks in reasonably safe condition for public travel. In 1963, prompted by the decision in *Spanel v. Mounds View School Dist. No. 621*, 264 Minn. 279, 118 N.W.2d 795 (1962), the legislature enacted Minn.Stat. ch. 466, the Municipal Tort Liability Act, which imposes liability—subject to the limitations set out in the other sections of the Act—on every municipality for its torts, whether arising out of a governmental or proprietary function. Numerous exceptions to tort liability are enumerated in Minn.Stat. § 466.03 (1992); as to the claims specified in that section, absent an applicable statute regulating the claim, a municipality is "immune from liability." Minn.Stat. § 466.03, subd. 1 (1992).

As it was originally enacted in 1963, Minn.Stat. § 466.03, subd. 4, conferred on munici-

palities immunity with respect to "[a]ny claim based on snow or ice conditions on any highway or other public place, except when the condition is affirmatively caused by the negligent acts of the municipality." Act of May 22, 1963, ch. 798, § 3, subd. 4, 1963 Minn. Laws 1396, 1397. When, however, the City of St. Paul asserted statutory immunity against a claim for damages resulting from a fall on an icy sidewalk, this court ruled that Minn.Stat. § 466.03, subd. 4 insulated the city only from liability resulting from accidents on streets and public places used for vehicular traffic and that it did not change the common law with respect to municipal liability for the condition of its sidewalks. *Lockway v. Proulx,* 283 Minn. 30, 33, 166 N.W.2d 79, 81 (1969).

The first application in Minnesota of a common law rule already well established in other jurisdictions appears in *Henkes v. City of Minneapolis,* 42 Minn. 530, 44 N.W. 1026 (1890). After pointing out that Mr. Henkes did not claim the sidewalk was obstructed but only that he had slipped on an icy sidewalk, Justice Mitchell set out the rule:

> Upon such a state of facts, there can be no recovery against the city, unless it is the duty of such municipalities to keep their sidewalks clear of ice. In this climate such a thing would be a physical impossibility, and an attempt to do it would involve an amount of expense that would bankrupt any city. No court has ever held that reasonable care required an attempt to do any such thing. An unbroken line of authorities holds that mere slipperiness of a sidewalk by either ice or snow is not a defect for which cities are liable; that their obligation to keep their streets in a safe condition does not extend to the removal of ice which constitutes no other defect than slipperiness.

42 Minn. at 532, 44 N.W. at 1027.

The line of cases begun with *Henkes* has remained unbroken for more than 100 years. A municipality has never been held liable for injuries sustained in a fall on newly formed glare ice although a municipality is liable if it negligently permits an accumulation of ice and snow to remain on a sidewalk for such a period of time that slippery and dangerous ridges, hummocks, depressions, and other irregularities develop there. *See, e.g., Bury v. City of Minneapolis,* 258 Minn. 49, 102 N.W.2d 706 (1960); *Hall v. City of Anoka,* 256 Minn. 134, 97 N.W.2d 380 (1959); *Larson v. City of Mankato,* 239 Minn. 484, 59 N.W.2d 312 (1953); *Woodring v. City of Duluth,* 224 Minn. 580, 29 N.W.2d 484 (1947).

Furthermore, the court has continued to recognize and honor the "mere slipperiness" rule subsequent to the adoption of the Municipal Tort Liability Act. *See, e.g., Teske v. Steele County,* 284 Minn. 559, 170 N.W.2d 234 (1969); *Smith v. Village of Hibbing,* 272 Minn. 1, 136 N.W.2d 609 (1965).

*Bufkin v. City of Duluth,* 291 N.W.2d 225 (Minn.1980), on which the court of appeals relied, did not involve a repudiation of the "mere slipperiness" rule but rather a declination to apply it under the particular circumstances of that case. The Duluth Arena Auditorium charged admission for the concert Bufkin was to attend, and the arena auditorium administrative board conceded that it endeavored to operate the auditorium at a profit. As he approached the main entrance to the auditorium, Bufkin slipped on a smooth patch of ice hidden beneath a light coating of snow. Ruling that the city should be held to the same standard as any individual entrepreneur engaged in an enterprise for profit, this court held that the long-standing general rule requiring a showing of more than smooth slippery ice to establish a municipality's negligence in the maintenance of its sidewalks was inapplicable "under the circumstances" of the case. *Id.* at 226–27. Although normal procedure called for an inspection of the sidewalk before a concert, no one on the building staff could testify to the condition of the sidewalk prior to Bufkin's fall. Inasmuch as there had been no snowfall or other unusual weather within a reasonable time before the accident and no indication of the length of time the ice has been permitted to remain on the entryway to the auditorium, it could not be said that, as a matter of law, Duluth was not negligent.

The instant case, on the other hand, presents a quite different scenario. Although spectators paid an admission fee to attend the hockey game, there is no evidence—nor

even an allegation—that the City operated the ice arena for profit or that the admission fee was anything other than a user fee designed to defray part of the cost of operation. Accordingly, there is no basis for departing from the "mere slipperiness" rule. The plaintiff herself saw no ice in the parking lot when she arrived at about 7 p.m.; she said that she saw water from melting snow running in the parking lot. Three hours later the running water had turned to what the plaintiff describes as smooth glare ice. Whether the ice had formed 2 hours or 5 minutes before the plaintiff's unfortunate tumble is unknown, but it is readily apparent that it had not remained there long enough for the formation of ridges, hummocks, depressions or other irregularities on which municipal liability is founded.

Because the plaintiff has failed to demonstrate genuine issues of material fact with respect to her claim that the City breached its common law duty to maintain its highways and sidewalks, the City is entitled to summary judgment. In view of our conclusion that there has been no showing from which it could be inferred that the City of Roseville has not met its common law duty with respect to the maintenance of its highways and sidewalks, we do not decide whether the City is immune from liability pursuant to Minn.Stat. § 466.03 (1992).

Therefore, we reverse the court of appeals and for the reasons set out above reinstate the judgment in favor of the City of Roseville.

Reversed and summary judgment reinstated.